**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 17a0085n.06

Case No. 16-5524

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr><td>CARLIN ROBBINS; REBECCA LUTZ,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td>FILED<br>Jan 30, 2017<br>DEBORAH S. HUNT, Clerk</td></tr>
<tr><td>Plaintiffs-Appellants,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td>ON APPEAL FROM THE</td></tr>
<tr><td>v.</td><td>)</td><td>UNITED STATES DISTRICT</td></tr>
<tr><td></td><td>)</td><td>COURT FOR THE EASTERN</td></tr>
<tr><td>NEW CINGULAR WIRELESS PCS, LLC,</td><td>)</td><td>DISTRICT OF KENTUCKY</td></tr>
<tr><td>dba AT&T Mobility,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>Defendant-Appellee.</td><td>)</td><td></td></tr>
</table>

BEFORE: DAUGHTREY, ROGERS, and COOK, Circuit Judges.

COOK, Circuit Judge. Several Kentucky residents sued to stop a company from building a cell-phone tower near their homes. They allege tort claims based on their concern that the tower will harm their health, devalue their properties, and emit excessive light and noise. The district court dismissed their claims and denied their request to amend their complaint. The residents appeal both decisions. We AFFIRM.

## I. Background

Defendant New Cingular Wireless, doing business as AT&T Mobility ("AT&T"), applied for a permit from the Lexington-Fayette Urban County Planning Commission ("Commission") to build a 125-foot cell-phone tower. Plaintiffs are residents ("Residents") representing a class of individuals who live near the proposed tower location. At the public hearing to discuss the tower's siting and

design, the Residents petitioned the Commission to reject AT&T's application. They complained that the tower would spoil the view from their properties, disturb the character of the neighborhood, endanger public health and safety, and depress residential property values.

To show that the tower's design would create an eyesore, the Residents pointed to the Commission's staff report that determined the tower would "undoubtedly affect the view from many residential properties." The report encouraged AT&T to ameliorate the problem by camouflaging the structure as a clock tower attached to an existing building. Even after receiving this recommendation, AT&T still retained its original "monopine" (i.e., fake pine tree) design.

To buttress their claims of harm to public health and property values, the Residents presented an expert report surveying the scientific literature on radio frequency ("RF") emissions from cell-phone towers. The research linked living near cell-phone towers to higher rates of cancer, brain tumors, and a multitude of other health problems. The report also drew on valuation studies to predict a 5% to 54% reduction in property prices upon AT&T's building the tower.

Despite the Residents' opposition, the Commission granted AT&T's application for the site permit. The Residents then challenged the decision by filing an administrative appeal in Fayette County Circuit Court. *See* Ky. Rev. Stat. Ann. § 100.347 (West 2016). The Fayette court dismissed the appeal with prejudice and denied the Residents leave to amend because they failed to fulfill a jurisdictional requirement—namely, listing the property owner of the cell-tower site as a defendant. Ky. Rev. Stat. Ann. § 100.347(4) (West 2016). The Residents have appealed this decision to the Kentucky Court of Appeals and are awaiting judgment.

Before the Fayette court issued its dismissal order, the Residents brought a second suit that forms the basis of this appeal. They filed the suit in state court and, using the expert report as proof of current and future harms, sought damages and an injunction for the following torts: (1) negligence,

(2) negligence per se, (3) gross negligence, and (4) nuisance. AT&T removed the suit to federal court based on diversity, then moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). In their response brief to AT&T's motion to dismiss, the Residents requested leave to amend the pleading, but at no point did they amend their complaint as a matter of course or file a separate motion to amend. The district court granted AT&T's motion to dismiss and denied the Residents' request to amend. The Residents timely appealed.

## II. Motion to Dismiss

"We review de novo a district court's dismissal of a plaintiff's complaint for failure to state a claim under Rule 12(b)(6)." *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006) (citing *Marks v. Newcourt Credit Grp., Inc.*, 342 F.3d 444, 451 (6th Cir. 2003)). In doing so, "[w]e 'construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff.'" *Watson Carpet & Floor Covering, Inc. v. Mohawk Indus., Inc.*, 648 F.3d 452, 456 (6th Cir. 2011) (quoting *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 902 (6th Cir. 2009)). For a plaintiff's claim to survive a motion to dismiss, the complaint must present sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007).

The district court dismissed the Residents' claims for three reasons: (1) the Telecommunications Act of 1996 ("TCA" or "the Act") impliedly preempts claims based on RF emissions that comply with Federal Communications Commission ("FCC") standards; (2) the claims allege harms that stem solely from the Commission's decision, which became unreviewable under Kentucky law due to the Residents' failure to name the owner of the cell-tower site as a defendant; and (3) even if not preempted by federal law or barred by state law, the Residents have not alleged facts

sufficient to sustain their tort claims. The Residents argue that the district court erred on all three grounds, but we find the district court's reasoning persuasive.

**(1) Preemption**

The Residents argue that the TCA neither expressly nor impliedly preempts their tort claims. The district court held that the TCA impliedly preempts the Residents' claims based on the tower's expected radiofrequency emissions. We agree with the district court's holding and rationale.

Congress can preempt state law either expressly or impliedly. *Yates v. Ortho-McNeil-Janssen Pharm., Inc.*, 808 F.3d 281, 293 (6th Cir. 2015) (citing *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000)). "Express preemption applies where Congress, through a statute's express language, declares its intent to displace state law." *Farina v. Nokia Inc.*, 625 F.3d 97, 115 (3d Cir. 2010) (citing *Hillsborough Cty. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 713 (1985)). Where a court deems express preemption inapplicable, it may still find implied preemption when federal and state laws conflict. *Yates*, 808 F.3d at 293–94 (citing *Crosby*, 530 U.S. at 372–73). So-called "conflict preemption" takes two forms: (i) impossibility preemption, "where []'it is impossible for a private party to comply with both state and federal law,'" and (ii) obstacle preemption, where "the state law is 'an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.* at 294 (quoting *Crosby*, 530 U.S. at 372–73).

Although the district court did not specify which form of implied preemption applied— impossibility or obstacle—it generally couched its opinion in terms of obstacle preemption. We agree that obstacle preemption fits the bill.

Congress passed the TCA to foster industry competition in local markets, encourage the development of telecommunications technology, and provide consumers with affordable access to telecommunications services. Telecommunications Act of 1996, Preamble, Pub. L. No. 104–404,

110 Stat. 56 (1996). The TCA furthers those goals by preventing local governments from impeding the siting and construction of cell towers that conform to the FCC's RF-emissions standards. *See* 47 U.S.C. § 332(c)(7)(B)(iv). By delegating the task of setting RF-emissions levels to the FCC, Congress authorized the federal government—and not local governments—to strike the proper balance between protecting the public from RF-emissions exposure and promoting a robust telecommunications infrastructure. *See id.*; *In the Matter of Procedures for Reviewing Requests for Relief from State & Local Regulations Pursuant to Section 332(c)(7)(b)(v) of the Commc'ns Act of 1934 in the Matter of Guidelines for Evaluating the Envtl. Effects of Radiofrequency Radiation*, 12 F.C.C. Rcd. 13494, 13505 (1997).

Allowing RF-emissions-based tort suits would upset that balance and impair the federal government's ability to promote the TCA's goals. A proliferation of suits similar to the one the Residents brought would tie up companies whenever they tried to build cell towers, leading to construction delays, increased costs, and ultimately, less public access to affordable cell-phone services. Widespread litigation would also shift the power to regulate RF emissions away from the FCC and into the hands of courts and state governments. *Stanley v. Amalithone Realty, Inc.*, 940 N.Y.S.2d 65, 70 (N.Y. App. Div. 2012).

The Residents respond by invoking an exception to § 332(c)(7)(B)(iv): if the tower's RF emissions exceed the maximum level set by the FCC, the Residents can sue. The Residents request discovery to find proof of whether AT&T's proposed tower would in fact exceed the FCC's standards. But they fail to allege facts in their complaint to support such a claim, and our precedent prohibits plaintiffs from turning discovery into a fishing expedition. *Michaels Bldg. Co. v. Ameritrust Co.*, 848 F.2d 674, 680 (6th Cir. 1988). Furthermore, without an existing tower, it is unclear how the Residents would uncover evidence of excessive RF emissions.

The Residents also insist that Kentucky's tort law skirts preemption because regardless of the whether RF emissions from the tower exceed the FCC maximum, a plaintiff can bring a tort claim in Kentucky as long as she shows any "contact" with RF emissions. This argument misses the mark; as long as state tort law conflicts with federal law, federal law displaces that application of state law.

**(2) Collateral Attack**

AT&T argues that the Residents' claims constitute an improper collateral attack on the Commission's decision to approve the tower. The Residents attempt to distinguish their tort claims by arguing that they seek redress for harms unrelated to the Commission's decision, and therefore do not attack the Commission's decision or authority. Their arguments prove unpersuasive.

Under the relevant statute of repose, Ky. Rev. Stat. Ann. § 100.347(2) (West 2016), an aggrieved party who does not properly appeal a planning board's final decision within 30 days loses her right to challenge that decision. *Id.* Although the Residents filed their administrative action on the last allowable day, they failed to name the property owner of the land as a defendant, which the statute requires for perfecting such an appeal. Ky. Rev. Stat. Ann. § 100.347(4) (West 2016); *Alcorp, Inc. v. Barton*, No. 2002-CA-001806-MR, 2003 WL 22064248, at *2, (Ky. Ct. App. Sept. 5, 2003) (unpublished); *see also Triad Dev./Alta Glyne, Inc. v. Gellhaus*, 150 S.W.3d 43, 47 (Ky. 2004) (requiring strict adherence to § 100.347's procedures). As a result, the state court lacked jurisdiction to review the Commission's decision. By the time the Residents realized their error and sought leave to amend, more than 30 days had passed. The Fayette court therefore dismissed their case with prejudice.

AT&T contends that the Residents' instant lawsuit merely reprises the state-court permit appeal and cloaks it in the form of tort claims meant to evade the state court's dismissal of their suit. *See Greater Cincinnati Marine Serv., Inc. v. City of Ludlow*, 602 S.W.2d 427, 428 (Ky. 1980). We agree. The Residents allege no actual harms from an existing tower; after all, AT&T has not even

started construction. Instead, the Residents ground their claims almost entirely on the "design and siting of the proposed cell tower." Because Ky. Rev. Stat. Ann. § 100.347 (West 2016) offers plaintiffs an adequate and exclusive remedy (i.e., appeal to a Kentucky court) for grievances related to a planning board's decision, a court must dismiss any collateral attack that seeks solely to rehash the same complaints. *Warren Cty. Citizens for Managed Growth, Inc. v. Bd. of Comm'rs of City of Bowling Green*, 207 S.W.3d 7, 17 (Ky. Ct. App. 2006); *see also Greater Cincinnati Marine*, 602 S.W.2d at 428.

The Residents offer four counterarguments. First, they reply that their torts amount to more than a second shot at appealing the Commission's decision because they allege harms independent of the Commission's authority over design and siting. That is, the Residents allege that the harm of decreasing property values stems from the anticipated building of the tower rather than the Commission's decision. Their proof consists of a general assertion that property owners need to "disclose the nature and proximity of the cellular tower to any potential purchasers." They also call attention to the expert report, which observed that property values dropped near "similar infrastructure projects from around Kentucky."

But the Residents have not shown that their harms arise from anything other than the Commission's decision. Indeed, the local zoning ordinances require the Commission to "provide for cellular telecommunications towers in appropriate locations . . . while . . . preserving the character and *value of surrounding property*." Lexington-Fayette Urban County Zoning Ordinance, Art. 25, https://drive.google.com/file/d/0B0aBvWAKyfxaZ1BQMWRIbmZ5U3c/view (emphasis added). Without an existing tower, the alleged decline in prices results merely from the Commission's decision encompassing considerations of property value.

Second, the Residents contend that because Ky. Rev. Stat. Ann. § 100.987 (West 2016)—Kentucky's statute governing cell-tower siting—provides a separate avenue to challenge the Commission's decision, their claims do not collaterally attack the Commission's decision, which falls under § 100.347. *See* § 100.987(10) (allowing an aggrieved party to bring suit "for review [of a planning commission's final action] in any court of competent appeal"). But regardless of whether the Residents could bring an action under § 100.987, Kentucky's decisional law would still require dismissal if the Residents simply used § 100.987(10) to recycle and resubmit their already-adjudicated § 100.347 permit appeal. *Warren Cty. Citizens for Managed Growth*, 207 S.W.3d at 17; *see also* § 100.347(2); *Greater Cincinnati Marine*, 602 S.W.2d at 428. Moreover, the statute of repose in § 100.347(2) applies to "*any final action* of the planning commission." *Id.* (emphasis added). Because the decision to approve a tower's site and design is a "final action of the planning commission," and § 100.987 contains no independent statute of repose, § 100.347(2) still applies to any § 100.987(10) appeal. With more than 30 days having passed since the Commission's final decision, the statute of repose would bar a potential § 100.987(10) action.[1]

Third, the Residents insist that because § 100.347 authorizes a court to review planning decisions, but not "property damages and common law tort damages due to an incompatible land use," their tort claims do not attack the Commission's decision. Not so; this argument ignores that their tort claims rely entirely on alleged harms resulting from the Commission's approval of the tower design and siting, and thus attack the Commission's decision through different means.

Finally, the Residents cite a string of Kentucky cases to support the argument that even after a planning commission approves a certain usage for a site, a plaintiff may bring a nuisance suit against the private party that causes *actual* damage to neighboring properties. The Residents, however, have

---

[1] Residents admit that § 100.347(2) governs a § 100.987(10) action.

suffered no actual damage; they merely allege harms from the planning board's decision (for which Kentucky law disallows collateral attack).[2]

## III. Leave to Amend

The Residents argue that the district court erred by refusing them leave to amend their complaint. When a district court denies a motion for leave to amend on futility grounds, we review the motion de novo. *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 698 (6th Cir. 2004), *abrogated on other grounds by Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27 (2011), *as recognized by Frank v. Dana Corp.*, 646 F.3d 954, 961 (6th Cir. 2011) (citing *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 518 (6th Cir. 2001)). But where, as here, plaintiffs have made a request in a responsive pleading without either formally moving for leave to amend or giving grounds for amendment, we review for abuse of discretion. *Id.*; *see also Louisiana Sch. Emps.' Ret. Sys. v. Ernst & Young, LLP*, 622 F.3d 471, 486 (6th Cir. 2010) ("[A] bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought . . . does not constitute a motion within the contemplation of Rule 15(a)." (quoting *PR Diamonds, Inc.*, 364 F.3d at 699)).

When evaluating the record, we note that the Residents had ample opportunity to amend. Once AT&T removed the case to federal court, the Residents could have amended the complaint as a matter of course during the 21 days after AT&T filed its motion to dismiss, moved for leave to amend after that period, or sought the written consent of AT&T. *See* Fed. R. Civ. P. 15(a). Over the span of twelve months—from removal to the district court's issuance of its dismissal order—the Residents took none of those actions. Instead, they asked in their opposition to the motion to dismiss that the

---

[2] Because Kentucky law bars collateral attack on the Commission's decision, and the TCA preempts the Residents' tort claims based on RF-emissions, we need not address whether the Residents have stated a plausible claim for relief.

"[district court] identify what, if anything, may need to be cured and afford [the Residents] an opportunity to file an amended [c]omplaint to address such concerns."

This court has consistently affirmed a district court's denial of such a request in similar situations where plaintiffs have barely attempted to follow the proper amendment procedures. *See, e.g.*, *Pulte Homes, Inc. v. Laborers' Int'l. Union of N. Am.*, 648 F.3d 295, 304–05 (6th Cir. 2011); *Louisiana Sch. Emps.' Ret. Sys.*, 622 F.3d at 486; *PR Diamonds, Inc.*, 364 F.3d at 698–700; *Begala v. PNC Bank, Ohio, Nat'l Ass'n,* 214 F.3d 776, 784 (6th Cir. 2000). On appeal, the Residents offer no explanation for their failure to adhere to Federal Rule of Civil Procedure 15(a) or reason to diverge from our precedent. Accordingly, the district court did not abuse its discretion.

## IV. Conclusion

For these reasons, we AFFIRM the district court's ruling.