STATE OF MAINE                                    BUSINESS & CONSUMER COURT
CUMBERLAND, ss.                                   DOCKET NO. BCD-CV-2020-36


FRIENDS OF MERRYMEETING BAY,          )
KATHLEEN MCGEE, ED FRIEDMAN,          )
and COLLEEN MOORE                     )
                                      )
            Plaintiffs,               )          **COMBINED ORDER ON THE**
                                      )          **ENVIRONMENTAL HEALTH TRUST'S**
       v.                             )          **MOTION FOR LEAVE TO FILE *AMICUS***
                                      )          ***CURIAE* BRIEF AND DEFENDANT'S**
                                      )          **MOTION TO DISMISS**
                                      )
CENTRAL MAINE POWER COMPANY           )
                                      )
            Defendant.                )


Before the Court are the Environmental Health Trust's (the "EHT's") motion for leave to

file an *amicus curiae* brief, and Defendant Central Maine Power Company's ("CMP's") motion

to dismiss Plaintiffs' complaint for failure to state a claim upon which relief can be granted in

accordance with M. R. Civ. P. 12(b)(6).

In its motion for leave to file an *amicus curiae* brief, the EHT asserts that neither the

Maine Rules of Civil Procedure, nor the Business and Consumer Docket Procedure Rules

prohibit the filing of an amicus brief by a non-party. For this reason, and because the EHT

asserts it has a substantial and compelling interest in the case, it requests leave from the Court to

file its brief. The Court denies EHT's motion.

Separately, CMP moves to dismiss the Plaintiffs' complaint asserting that the nuisance

claim is preempted by both Federal Aviation Administration ("FAA") and Federal

Communications Commission ("FCC") regulations. Conversely, Plaintiffs assert that the FAA's

guidance to CMP constitutes a legally unenforceable recommendation rather than a set of

requirements, and that the FCC regulations cited by CMP are inapplicable to the facts of this

1

case. The Court finds Plaintiffs' nuisance claims subject to preemption, and thus grants CMP's motion to dismiss in its entirety. Plaintiffs are represented by Attorneys Bruce Merrill, William Most, and David Lanser. CMP is represented by Attorneys Gavin McCarthy and Matthew Altieri. The Environmental Heath Trust is represented by Attorney Scott Sells.

## FACTUAL BACKGROUND

In 2019, CMP replaced two utility towers that support power lines across the Chops Passage of the Kennebec River as the river flows into Merrymeeting Bay. While the old towers were 195-feet-tall, the new towers reach approximately 240-feet-tall. The towers are outfitted with flashing safety lights, aimed at alerting aircraft of their presence. Additionally, in response to concerns from Plaintiffs and other members of the public about the frequency of flashing lights, the towers will include an Active Aircraft Detection Lighting System (the "Radar System") that uses radar to trigger the flashing lights when aircraft are detected within approximately 3.5 miles of the towers.

In accordance with FAA regulations, CMP filed public notice of the proposed tower construction with the Secretary of the FAA. In response, the FAA issued a "determination of no hazard to air navigation" with respect to the towers on March 12, 2018. (Pl.'s Ex. A). The no hazard determination explained that the FAA had conducted an aeronautical study, which "revealed that the structure does not exceed obstruction standards and would not be a hazard to air navigation, provided certain conditions are met. *Id.* The FAA's determination was conditioned on the structure being "marked/lighted in accordance with an FAA Advisory Circular.[1]

---

[1] See FAA Circular 70/746001 L Change 1, Obstruction Marking and Lighting, a med-dual system—Chapters 4, 8,(M-Dual),&12" ("The FAA Safety Lighting Standards")

On March 25, 2020, in response to a revised submission by CMP to cover the use of the Radar System, the FAA issued a new determination of no hazard, again conditioned on the marking of the towers and utilization of a lighting system. In issuing its determination, the FAA provided that the towers are subject to the licensing authority of the FCC. Next, on July 21, 2020 the FCC issued CMP a radio station authorization permitting the towers to broadcast using frequencies of 9.2-9.5 GHz. Plaintiffs requested the FCC conduct an environmental assessment, but the FCC declined, apparently finding that the Radar System did not cause RF exposure exceeding the FCC's safety standards. *See* 47 C.F.R. § 1.1306(c)(2) & 1.1307.

## LEGAL STANDARD

Two motions are before the Court in this matter: 1) the EHT's motion for leave to file *amicus curiae,* and 2) CMP's motion to dismiss the complaint for failure to state a claim under M. R. Civ. P. 12(b)(6).

First, the term *amicus curiae* implies "the friendly intervention of counsel to remind the Court of some matter of law which might otherwise escape its notice and in regard to which it might go wrong." *Hamlin v. "Perticuler Baptist Meeting House",* 103 Me. 343, 69 A. 315, 318 (Me. 1907). Unlike appeals, the Maine Rules of Civil Procedure neither authorize nor prohibit the filing of an amicus brief by a non-party in the Business and Consumer Court when it serves as a trial court. Though not applicable at the trial court level, the Rules of Appellate Procedure permit a*micus curiae* briefs to be filed if parties to the appellate proceeding consent, "or by leave of the Law Court." M.R. App. P. 7A(e)(1)(A).

Maine Trial Courts have previously considered *amicus* filings under limited circumstances. *See e.g. United States Bank N.A. v. Cozzone, 2019 Me. Super. LEXIS 109, *4.* However, the First

3

Circuit Court of Appeals has urged caution with respect to the federal trial courts: "We believe that a district court lacking joint consent of the parties should go slow in accepting" an amicus brief. *Strasser v. Doorley,* 432 F.2d 567, 569 (1st Cir. 1970).[2] As such, the Court will grant an *amicus curiae* brief only where there is good reason to believe it can assist the Court reach a correct legal conclusion.

Second, when reviewing a motion to dismiss under Rule 12(b)(6), the Court "consider[s] the facts in the complaint as if they were admitted." *Bonney v. Stephens Mem. Hosp.,* 2011 ME 46, ¶ 16, 17 A.3d 123. The complaint is viewed "in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory. *Id.* (quoting *Saunders v. Tisher,* 2006 ME 94, ¶ 8, 902 A.2d 830). "Dismissal is warranted when it appears beyond a doubt that the plaintiff is not entitled to relief under any set of facts that [it] might prove in support of [its] claim." *Id.*

## DISCUSSION

### I.    EHT's Motion for Leave to File an *Amicus Curiae* Brief

In support of its motion for leave to file an *amicus curiae* brief, EHT asserts that it has a substantial and compelling interest in the case, and can aid the Court in addressing the unique and significant harm suffered by those who cannot seek relief from federal agencies. Specifically, EHT describes the light and radio frequencies emitted from the Towers as "needless" and believes there is a likelihood of harmful health and environmental effects stemming therefrom. "As a leader in state-of-the art scientific research into the areas of harm

---

[2] The First Circuit has also noted that "the prime if not sole, purpose of an amicus curiae brief is what its name implies, namely, to assist the court on matters of law." *Banjeree v. Bd. Of Trustees,* 648 F.2d 61, 65 n.9 (1st Cir. 1981).

alleged," EHT asserts it can ensure a "complete and plenary" presentation of the issues before the Court. (EHT's Mot. at 4).

While the Court does not question EHT's substantive experience researching the alleged harms at issue, it is unclear what *legal* aid EHT hopes to provide the Court. It is clear EHT feels well-positioned to weigh in on "difficult and complex technical issues." However, EHT does not allege that Plaintiffs failed to address any specific legal arguments, or that they cannot represent the relevant issues in this matter. Instead, EHT repeats the exact harms alleged in Plaintiffs' complaint, and further expanded on in their opposition to CMP's motion to dismiss.

At the motion to dismiss stage, the Court is not being asked to make factual evaluations, nor to balance competing policy views. Instead, CMP's motion to dismiss contends that Congress has exclusively delegated such determinations to the FAA and FCC, and for that reason Plaintiffs' claims are preempted. The Court's role is to determine, in the light most favorable to the plaintiff, whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory. EHT has failed to demonstrate how it can aid the Court in making a correct legal determination. Accordingly, EHT's motion for leave to file an *amicus curiae* brief is denied.

## II. CMP's Motion to Dismiss

According to the Supremacy Clause of the United States Constitution, federal law "shall be the supreme Law of the land; and the Judges in every state shall be bound thereby, any Thing in the constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. "Congress has the power to preempt state law." *Arizona v. United States,* 567 U.S. 387, 399 (2012). Preemption applies equally to all forms of state law, including civil actions based on

5

state tort law. *See, e.g. Buckman v. Plaintiffs' Legal Comm.,* 531 U.S. 341, 351 (2001). There are three categories of preemption: 1) express preemption; 2) field preemption; and 3) conflict preemption. *Hillsborough Cnty. v. Automated Med. Labs., Inc.,* 471 U.S. 707, 713 (1985).

Field preemption occurs where a framework of federal regulation is "so pervasive that Congress left no room for the States to supplement it or where there is a federal interest so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." *Arizona,* 567 U.S. at 399. Courts may infer Congress's intent to occupy a field to the exclusion of state law "where the pervasiveness of the federal regulation precludes supplementation by the States, where the federal interest in the field is sufficiently dominant, or where "the object sought to be obtained by the federal law and the character of obligations imposed by it. . . reveal the same purpose. *French v. Pan Am. Exp., Inc.,* 869 F.2d 1, 2 (1st Cir. 1989) (quoting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230 (1947).

Conflict preemption occurs "where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of congress." *Freightliner Corp. v. Myrick,* 514 U.S. 280, 287 (1995); *see also Weaver's Cove Energy, LLC v. R.I. Coastal Res. Mgmt.,* 589 F.3d 458, 472-73 (1st Cir. 2009). Analysis of conflict preemption requires Courts to examine "the relationship between state and federal laws as they are interpreted and applied, not merely as they are written." *Jones v. Rath Packing Co.,* 430 U.S. 519, 527 (1977). This analysis is a two-step process of first ascertaining the construction of the [state and federal laws] and then determining the constitutional question whether they are in conflict." *Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co.,* 450 U.S. 311, 317 (1981). Courts consider the nature of the activities states seek to regulate, rather than on the method of regulation adopted. *Id.* Courts in

the First Circuit have taken a "functional approach" to preemption, focusing "on the effect which the challenged enactment will have on the federal plan." *French,* 869 F.2d at 2.

## A. FAA Hazard Determination and Regulation of Light System

According to the complaint, the operation of the Lighting System has negatively impacted Plaintiffs' enjoyment, and the economic value of properties in Merrymeeting Bay. However, in its motion to dismiss, CMP contends that Plaintiffs' nuisance claim is preempted by the Federal Aviation Act ("The Act"). According to the Act, the United States Government has exclusive sovereignty of airspace of the United States. 49 U.S.C. § 40103. The Secretary of Transportation is authorized to review "structures interfering with air commerce." 49 U.S.C. § 44718. The Secretary's review begins by requiring adequate public notice, in the form and way the Secretary prescribes, of the proposed construction of structures when said notice will promote "(1) safety in air commerce; and (2) the efficient use and preservation of the navigable airspace." *Id.* § 44718(a).

After receiving public notice, the Secretary determines whether the proposed structure "may result in an obstruction of the navigable airspace or an interference with air navigation facilities and equipment or the navigable airspace. *Id.* § 44718(b)(1). If so, the Secretary must "conduct an aeronautical study to decide the extent of any adverse impact on the safe and efficient use of the airspace, facilities, or equipment." *Id.* The Secretary must then issue a report disclosing any adverse impacts on the "safe and efficient use" of the airspace resulting from the construction of the structure, subject to an aeronautical study. *Id.* § 44718(b)(2).

The FAA's statutory obstruction standards "are supplemented by other manuals and directives used in determining the effect on the navigable airspace of a proposed construction or alteration." 14 C.F.R. § 77.25(c). One such supplementation is the FAA Safety Lighting

Standards, which set forth standards for marking and lighting obstructions that have been deemed to be a hazard to air navigation. *See* FAA Lighting Standards at i. The FAA Lighting Standards recommend minimum standards "in the interest of safety, economy, and related concerns." *Id.* § 2.3. "To provide an adequate level of safety, obstruction lighting systems should be installed, operated, and maintained in accordance with the recommend standards." *Id.*

Case law at the federal level has consistently held that the Act preempts the field of airspace safety. In *City of Burbank v. Lockheed Air Terminal,* the United States Supreme Court found a municipal ordinance assigning curfew to airplane takeoffs and landings was preempted by the Act because it had an impact on airspace congestion and therefore safety. 411 U.S. 624, 633 (1973). Likewise, the 1st, 2nd, 3rd, 6th, and 10th circuits have all indicated that the FAA has exclusive authority over the airspace of the United States.[3]

In light of the FAA's regulatory framework, read alongside numerous Supreme Court and Circuit Court holdings, the Court finds that Plaintiffs' state law nuisance action is subject to both field and conflict preemption. As previously stated, field preemption occurs where a framework of federal regulation is "so pervasive that Congress left no room for the States to supplement it or where there is a federal interest so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." *Arizona,* 567 U.S. at 399. The comprehensive

---

[3] *See French v. Pan Am Express Inc.,* 869 F.2d 1, 3 (1st Cir. 1989); *Airline Pilots Ass'n, Int'l v. Quesada,* 276 F.2d 892, 894 (2nd Cir. 1960)(explaining that the Federal Aviation Act "was passed by Congress for the purpose of centralizing in a single authority—indeed, in one administrator—the power to frame rules for the safe and efficient use of the nations airspace.") *Abdullah v. Am. Airlines, Inc.,* 181 F.3d 363, 371 (3rd Cir. 1999)("Because the legislative history of the FAA and its judicial interpretation indicate that Congress's intent was to federally regulate aviation safety, we find that any state or territorial standards of care relating to aviation safety are federally preempted."); *Greene v. B.F. Goodrich Avionics Sys., Inc,* 409 F.3d 784, 795 (6th Cir. 2005); *U.S. Airways, Inc. v. O'Donnell,* 627 F.3d 1318, 1327 (10th Cir. 2010)(collecting cases and concluding "that the comprehensive regulatory scheme promulgated pursuant to the FAA evidences the intent for federal law to occupy the field of aviation safety exclusively.

regulatory scheme promulgated pursuant to the FAA evidences the intent for federal law to occupy the field of aviation safety exclusively. *U.S. Airways, Inc.,* 627 F.3d at 1327 (10th Cir. 2010). The FAA has been granted exclusive regulatory authority over the airspace of the United States. According to the FAA's regulations, when a company like CMP wants to build towers, it must file public notice with the FAA. Under certain circumstances the FAA must conduct an aeronautical study. The resulting report is issued to determine whether the structure being built will be an obstruction, or hazard to air safety. In this case, the report determined the towers were not hazardous, *under the condition* the towers are outfitted according to the FAA's Lighting Standards. Intuitively, one would read the no-hazard determination's conditional language to mean that, absent lights meeting the FAA standard, the towers could qualify as a hazard to air navigation. It would be not only counterintuitive, but directly in conflict with the FAA's regulatory scheme to negate the agency's safety recommendations. For this reason, the Court also finds Plaintiffs' nuisance claim subject to conflict preemption. To punish a party for following the FAA's safety standards and explicit recommendations surely creates an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. *See Freightliner Corp. v. Myrick,* 514 U.S. 280, 287 (1995).

Plaintiffs concede that generally, the Act, enforced by the FAA, preempts state regulation of airspace safety. However, Plaintiffs contend that the FAA lacks authority over the towers, and that because the FAA Lighting Standards take the form of "recommendations", the FAA is not empowered to sue to enforce non-compliance with its determinations. For these reasons, Plaintiffs also contend their state tort claim is not preempted.

Plaintiffs point out that while certain structures, including CMP's towers, require notice to be given to the FAA, because CMP's towers do not in fact interfere with air commerce, the

FAA lacks jurisdiction over the safety of the towers. Therefore, Plaintiffs' contend that the Act does not apply beyond the notice requirement. Plaintiffs argument here rests on two related assertions: 1) the Chops Passage where CMP build the towers is not a navigable airway; and 2) the towers are not an "obstruction to air navigation" according to 14 C.F.R. § 77.17.

Plaintiffs first assert that Chops Passage fails to qualify as navigable airspace because navigable airspace exists "only at and above minimum flight altitudes. . ." 49 U.S.C. § 40102. The minimum safe altitude for aircraft over a city, town, or settlement is 1,000 feet above the highest obstacle within a horizontal radius of 2,000 feet, and over open water, no aircraft may be operated closer than 500 feet to any person, vessel, vehicle, or structure. 49 U.S.C. § 91.119. Because Chops Passage is only 790' wide, it has been previously labeled by the FAA as a "No Traverseway", and Plaintiff asserts that it fails to qualify as navigable airspace. Relatedly, Plaintiffs also assert that the towers fail to qualify as an obstruction to air navigation. According to 14 C.F.R. § 77.17, objects under 499 feet (like the towers at issue) are only presumptively obstructions within certain distance of airports, within certain obstacle clearance areas, or the "surface of a takeoff and landing area of an airport or any imaginary surface established under §§ 77.19, 77.21, or 77.23." Plaintiffs assert that the towers do not fall within the required distance of a takeoff or landing area of an airport or any imaginary structure defined by the regulations. Thus, Plaintiffs argue that because the towers do not intersect navigable airspace, the FAA's regulatory authority fails to reach CMP's towers.

Plaintiffs' arguments are, however, inconsistent with the Court's interpretation of the regulatory framework. The FAA has authority over all airspace, not just navigable airspace. 49 U.S.C. § 40103. CMP was therefore required to provide public notice of the construction and did so. The FAA was then required to conduct an aeronautical study to assess the safety of the

towers and did so. 14 C.F.R. § 77.25(a). Then, the FAA was required to determine, based on that study, whether the tower was a safety hazard. The FAA concluded that it was not, conditioned on CMP's compliance with the Lighting Standards. (Pl.'s Ex. A). In addition to CMP's compliance with the FAA's regulatory scheme, the Court notes that the definition of navigable airspace is relative to the "highest obstacle" or nearest "structure", and therefore this structure could never actually be in "navigable airspace" as defined. For this reason, it appears that the regulations presume that structures existing below navigable airspace could be a hazard to air navigation and establish a process for determining whether they are and providing safety standards. Congress has granted the FAA discretion to determine whether structures qualify as hazards to air navigation or obstructions. The FAA has a codified process for making such a determination, and in this case the FAA's recommendations follow directly from that process.

Plaintiffs also assert that because the FAA's determination included *recommendations* rather than a legally enforceable *order*, state court action is not preempted. Plaintiffs are correct that the FAA's determinations are phrased as *recommendations,* and that the FAA does not claim enforcement authority for its "no hazard" determinations. Instead of issuing enforceable orders, the FAA relies on other means to obtain compliance, and the federal statutory and regulatory scheme for managing air safety maintains its preclusive effect. For instance, a party could seek a common law remedy in state court for a defendant's *noncompliance* with FAA regulations and recommendations. However, the Court concludes that a common law action brought in state court is subject to conflict preemption when the injury described is a defendant's adherence to FAA guidance. A holding to the contrary would create an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. Thus, the Court grants CMP's motion to dismiss Plaintiff's nuisance claim relating to the Lighting System.

### B. FCC Regulations and Telecommunications Act Preemption of Nuisance Claim Regarding the Tower's Radar System

CMP also moves to dismiss Plaintiffs' nuisance claim regarding the tower's radar system. In their complaint, Plaintiffs contend that installation of the proposed Radar System would create a potentially injurious impact on the residents of Merrymeeting Bay and the Bay's special environment. CMP contends that, like Plaintiffs' nuisance claim relating to the lighting system, a nuisance claim aimed at preventing the installation of the Radar System is preempted by the FCC regulatory authority.

The United States government has for over a century, maintained control "over all the channels of radio transmission." 47 U.S.C. § 301. Pursuant to this authority, any person seeking to transmit signals by radio must first obtain a license from the FCC. *See Id.* The Federal Communications Act ("FCA") directs the FCC to regulate, among other things, the "kind of apparatus to be used with respect to its external effects and the purity and sharpness of the emissions from each station and from the apparatus therein. *Id.* § 303(e). The FCC also has broad authority to develop regulations as needed to implement the FCA. *Id.* §§ 154(i), 201(b), and 303(r).

Pursuant to the FCC's authority under the FCA and its obligations under the National Environmental Policy Act of 1969 ("NEPA"), 42 U.S.C. §§ 4321-35, the FCC began evaluating the potential biological effects of radiofrequency ("RF") emissions in the early 1980's and adopted standards for RF exposure in 1985. S*ee In re Responsibility of the FCC to Consider Bio. Effects of Radiofrequency Radiation,* 100 F.C.C.2d 543, ¶¶ 2-3, 24 (1985). The FCC has since engaged in formal rulemaking to determine whether it should revise its standards regarding RF emissions, and has adopted RF testing, certification, and emission standards to "protect the

12

public health with respect to RF radiation from FCC-regulated transmitters." *In re Guidelines for Evaluating the Envt. Effects of Radiofrequency Radiation,* 11 F.C.C.R. 15123, 15127*,* ¶ 10 (1996). The FCC reported that the standards "represent a consensus view of the federal agencies responsible for matters relating to public safety and health." *Id.* at ¶ 2. In 2019 the FCC reviewed these standards and concluded that no changes were necessary in light of the existing science. As such, the FCC's standards regarding limits on permissible absorption rates of RF emissions are published at 47 C.F.R. § 1.1310, falling under the subpart "Procedures for Implementing the National Environmental Policy Act of 1969." The FCC requires a person obtaining a license to operate a radio transmitter to complete an environmental assessment unless the absorption standards of Section 1.1310 are met. S*ee* 47 C.F.R. § 1.1307.

Federal Courts have consistently held that state law efforts to regulate the health and environmental health effects of RF emissions are preempted. For instance, in *Robbins v. New Cingular Wireless PCS, LLC,* 854 F.3d 315 (6th Cir. 2017), the plaintiffs sought to enjoin the construction of a cell-phone tower by filing state law tort claims against the telephone service provider. *Id.* at 318. The plaintiffs claimed the cellular tower would endanger public health and safety. *Id.* However, the trial court dismissed the state-law tort claims because federal law "impliedly preempts claims based on RF emissions that comply with Federal Communications Commission ('FCC') standards." *Id.* at 319. The Sixth Circuit surveyed the law of conflict preemption and determined that permitting "RF-emissions based tort suits" would create an "obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* Other circuits have come to similar conclusions. *See Farina v. Nokia, Inc.,* 625 F.3d 97, 126 (3d Cir. 2010) (holding that "a jury determination that cell phones in compliance with the FCC's. . . guidelines were still unreasonably dangerous would, in essence, permit a jury to second guess

13

the FCC's conclusion on how to balance its objectives). In summary, Congress has granted the FCC authority under the FCA and NEPA to regulate RF-emissions stemming from the transmission of radio signals. Likewise, federal case law has consistently held that RF-emissions based tort suits are preempted by the FCC's regulatory scheme.

Conversely, Plaintiffs contend that their state-law nuisance claim is not preempted because, while the Telecommunications Act of 1996 ("TCA") (the law governing cell-phone towers) contains a preemption clause, the broader FCA governing radar systems does not. Plaintiffs' argument is unavailing. CMP does not rely on the preemption provision in the TCA. Instead, CMP asserts that preemption occurs because the state tort action interferes with the FCC's regulation of RF-exposure. The FCC's RF-exposure limits were not issued as part of the TCA and are instead "procedures implementing the National Environmental Policy Act of 1969." *See* 47 C.F.R. § 1.301, *et seq.* As CMP points out in their Reply Brief, the FCC has been regulating RF emissions since 1985, more than a decade before the TCA was even passed. In a similar vein, Plaintiffs assert that the federal cases cited above deal entirely with cell-phone regulation rather than radar systems. However, neither of the cases cited above rely on the TCA's express preemption, and instead turned on regulation applicable to all radio transmissions.

Plaintiffs' nuisance claim seeks to prevent the installation of the Radar System to prevent injury to the residents of Merrymeeting Bay, as well as the surrounding environment. (Compl. ¶¶ 147-161). However, CMP was required to get a license from the FCC to operate the radio transmitter at issue, the tower is within FCC jurisdiction, and thus the FCC's RF exposure limits apply to it. Inherent to regulating RF-emissions, the FCC engaged in a balancing of interests, considering impacts on public health and the ability of radio frequencies to reach consumers,

14

leading to the established safety standards. The level of RF-exposure in the towers at issue exists within the range determined safe by the FCC. For this Court to enjoin CMP from installing the Radar System, it would be required to substitute its assessment of potential RF-emission related harms in place of the "consensus view of the federal agencies responsible for matters relating to public safety and health", including the FCC. Likewise, Plaintiffs' nuisance claim is of the exact type already held preempted by federal courts. Were the Court to hold otherwise, it would create an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. Thus, conflict preemption also bars Plaintiffs' state law nuisance action with relation to the Radar System. Therefore, CMP's motion to dismiss is granted in its entirety.

### CONCLUSION

For the reasons stated above, the Court denies EHT's motion for leave to file an *amicus curiae* brief. Because Congress has delegated authority to the FAA and FCC to regulate the Lighting and Radar Systems, the Court finds Plaintiffs' nuisance claims subject to preemption. Accordingly, the Court grants CMP's motion to dismiss in its entirety.

The Clerk is instructed to enter this Order on the docket for this case by incorporating it by reference. M.R. Civ. P. 79(a).

**January 15, 2021**                                          **/s/ Justice Michaela Murphy**

**DATE**                                                          **SUPERIOR COURT JUSTICE**

15

*FRIENDS OF MERRYMEETING BAY, et al.*

*v.*

*CENTRAL MAINE POWER*

Party Name:                                                    Attorney Name:

*Ed Friedman.*                          **Bruce Merrill, Esq.**
*Friends of Merrymeeting Bay*                Law Office of Bruce Merrill PA
*Kathleen McGee*                             225 Commercial St. Suite 501
*Colleen Moore*                              Portland, ME 04101

*Central Maine Power*                   **Gavin McCarthy, Esq.**
                                             Pierce Atwood
                                             Merrills Warf
                                             254 Commercial St
                                             Portland, ME 04101