NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0211n.06

Case No. 24-1681

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Apr 18, 2025
KELLY L. STEPHENS, Clerk

KELSEY TROTTA,

    Plaintiff-Appellant,

v.

AMERICAN AIRLINES, INC.,

    Defendant-Appellee.

)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF
MICHIGAN

OPINION

Before: THAPAR, BUSH, and LARSEN, Circuit Judges.

THAPAR, Circuit Judge. Kelsey Trotta bought a plane ticket from American Airlines' website. But before completing her booking, Trotta bought travel assistance from Allianz Global Assistance ("AGA"), too. She later sued American, alleging that the airline unjustly received a large amount of her payment to AGA. The district court dismissed her suit for failure to state a claim. We affirm.

I.

Kelsey Trotta visited American Airlines' website to purchase a plane ticket. After Trotta selected her flight, the website asked if she wanted to buy travel assistance. Travel assistance can include destination information, entertainment, translation services, medical referrals, or concierge services, among other services. Mich. Comp. Laws § 500.1283(i). The site highlighted this product: it "[r]ecommended" Trotta say "yes," and the button to select "yes" featured a bright-green checkmark. R. 9, Pg. ID 125. The site also said that the travel assistance products were

"recommended/offered/sold by 3rd party, Allianz Global Assistance, not American Airlines." *Id.* Trotta bought her ticket and paid for the travel assistance. AGA emailed her confirmation of her purchase.

As it turns out, American received a cut of Trotta's travel assistance purchase. When Trotta discovered this fact, she sued, both on behalf of herself and a class of customers who also bought travel assistance. Trotta claimed that American intentionally failed to disclose this "hidden fee" because the airline figures that consumers would be less likely to buy the travel assistance products if they knew about this arrangement. *Id.* at Pg. ID 127. And she sought relief on a class-wide basis, arguing that (1) American had breached its contract with her, and (2) in the alternative, American was unjustly enriched under Michigan law. American removed the case to federal court, and the district court dismissed Trotta's suit for failure to state a claim.

Trotta appealed the dismissal of her unjust enrichment claim.

II.

We review a district court's ruling on a motion to dismiss de novo. *Robbins v. New Cingular Wireless PCS, LLC*, 854 F.3d 315, 318 (6th Cir. 2017). In doing so, we construe the complaint in the light most favorable to the plaintiff, accept the complaint's allegations as true, and draw all reasonable inferences in the plaintiff's favor. *Id.* at 319. As a federal court siting in diversity, we apply the substantive law of the relevant state. *Conlin v. Mortg. Elec. Registration Sys., Inc.*, 714 F.3d 355, 358 (6th Cir. 2013). We "anticipate how the relevant state's highest court would rule in the case and are bound by controlling decisions of that court." *In re Dow Corning Corp.*, 419 F.3d 543, 549 (6th Cir. 2005). Here, Michigan is the relevant state.

Under Michigan law, a claim for unjust enrichment arises when a party "has and retains money or benefits which in justice and equity belong to another." *Wright v. Genessee County*, 934

N.W.2d 805, 809 (Mich. 2019) (citation omitted). This cause of action is grounded "in the idea that a party 'shall not be allowed to profit or enrich himself inequitably at another's expense.'" *Id.* (citation omitted). The remedy for unjust enrichment is restitution "for money in the amount of the defendant's unjust enrichment." *Id.* (citation omitted).

A.

An unjust enrichment claim under Michigan law has two elements. First, the plaintiff must establish the "receipt of a benefit by the [defendant] from the [plaintiff]." *Karaus v. Bank of N.Y. Mellon*, 831 N.W.2d 897, 905, 906 (Mich. Ct. App. 2012) (per curiam).[1] Second, the plaintiff must show "an inequity resulting to the [plaintiff] because of the retention of the benefit." *Id.* Straightforward so far.

The parties have introduced a wrinkle to element one. American, for its part, argues that Michigan law requires that a plaintiff give a benefit *directly* to the defendant. Trotta, for her part, asserts that Michigan law allows unjust enrichment claims to proceed even for *indirect* benefits. That distinction matters because Trotta didn't allege that she directly gave American a benefit when she purchased travel assistance. Instead, she contends that American was unjustly enriched when AGA remitted to American a portion of her payment. The district court agreed with American that Michigan requires a direct benefit and found that Trotta had only conferred an indirect benefit on American.

But we need not make an "*Erie* guess" as to whether Michigan requires a "direct benefit" showing across the board. Why? Trotta failed to make a showing on element two: whether there

---

[1] This formulation captures the mine-run of unjust enrichment cases. But there's a large pocket of unjust enrichment law that specifically allows a plaintiff to recover even though the plaintiff didn't confer any benefit on the defendant. *See* Restatement (First) of Restitution ch. 6 ("Benefits Lawfully Acquired Which are Not Conferred by the Person Claiming Restitution"); Restatement (Third) of Restitution and Unjust Enrichment ch. 6 ("Benefits Conferred by a Third Person").

is "inequity resulting to the [plaintiff] because of the retention of the benefit by the [defendant]," no matter who conferred the benefit to the defendant. *Karaus*, 831 N.W.2d at 906. We turn to that element next.

B.

An unjust enrichment claim, unsurprisingly, requires (1) an enrichment (2) that is unjust. *City of Highland Park v. County of Wayne*, No. 334203, 2018 WL 1020188, at *5 (Mich. Ct. App. Feb. 22, 2018) (per curiam). Arguably, whether the "defendant accepted or retained the benefit under circumstances making it inequitable for the defendant to retain the benefit without payment of its value" encompasses "the whole of the question presented." Restatement (Third) of Restitution and Unjust Enrichment § 1, cmt. d; *see Moses v. Macferlan* (1760) 97 Eng. Rep. 676, 681 (KB) ("In one word, the gist of this kind of action is, that the defendant, upon the circumstances of the case, is obliged by the ties of natural justice and equity to refund the money."). For instance, it's inequitable for a plaintiff to receive nothing from a defendant who benefited from the plaintiff's performance and assured the plaintiff he would be paid. *Kammer Asphalt Paving Co. v. E. China Twp. Schs.*, 504 N.W.2d 635, 641 (Mich. 1993). Here, Trotta failed to state a claim for unjust enrichment because it wasn't inequitable for American to retain a portion of the money that Trotta paid to AGA.

Trotta got what she bargained for—travel assistance. That is not inequitable. *Univ. Pediatricians v. Wilson*, No. 353462, 2021 WL 4228193, at *6 (Mich. Ct. App. Sept. 16, 2021) (per curiam). She voluntarily paid the listed price for travel assistance and received that service in return. *See AFT Michigan v. Michigan*, 846 N.W.2d 583, 600 (Mich. Ct. App. 2014) ("entirely voluntary" nature of benefits plan defeated plaintiffs' unjust enrichment claim). Where's the inequity in that? Any fees remitted to American didn't injure Trotta: she still got what she paid

for. *Whiteman v. AGA Serv. Co.*, No. 24-12524, 2025 WL 869409, at *3 (11th Cir. Mar. 20, 2025) (per curiam) ("Nor did JetBlue's agreement with Allianz work to Whiteman's detriment—Allianz told him that the price was $36.36 and that was the price he paid.").

Trotta nonetheless argues that there are two reasons why American's retention of a portion of the fee is inequitable. First, she says American received "something for nothing." Appellant Br. at 7 (internal quotation marks omitted).

But American provided Trotta with the opportunity to buy travel assistance along with her plane ticket. In doing so, American saved Trotta the time and trouble of buying travel assistance separately. "[A]s with any normal sale of a good, there was nothing 'unjust' about this." *Gerboc v. ContextLogic, Inc.*, 867 F.3d 675, 679 (6th Cir. 2017). A bag of peanuts costs more at a baseball stadium than it does at a supermarket, precisely because the buyer is paying a premium for convenience. To take the analogy one step further, it costs more to buy peanuts from a supermarket than it does to buy peanuts from a wholesaler. But it's not unjust for the supermarket to make money by marking up the peanuts' price. And, contrary to Trotta's belief, it doesn't matter that American doesn't provide passengers with any service related to the travel assistance. Convenience has a cost. Great American Ballpark doesn't need to provide ketchup or mustard for it to be just to take a cut of third-party vendors' hot dog revenues.

Not so, says Trotta, because American admitted that it doesn't provide passengers with any service related to the travel assistance. But this argument ignores the context of the alleged admission. Trotta brought a breach of contract claim against American as well. That claim relied on federal regulations which required airlines to prominently display fees for "optional services." R. 9, Pg. ID 128, 135. In its motion to dismiss, American countered that this regulation did not apply because AGA, not American Airlines, provided the travel assistance. And that regulation

only covered "optional services" that "*the airline provide[d]*." 14 C.F.R. § 399.85(d) (emphasis added). Read in context, then, American didn't admit that including the travel assistance in its booking path provided "no service" to its customers.

Trotta's second theory fares no better. Trotta says American misled her by disclaiming its financial interests in her transaction with AGA. And if American hadn't misled her, she says, she wouldn't have purchased travel assistance to begin with. Or she would've purchased travel assistance on AGA's website for a lower price.

But American didn't mislead Trotta. American said that AGA "recommended/offered/sold" the travel assistance. R. 9, Pg. ID 125. That statement isn't misleading—AGA *did* recommend, offer, and sell the travel assistance to Trotta. "When customers bought travel assistance services from Allianz, they got exactly what they paid for: travel assistance services. [The airline] did not deceive [Trotta] by giving [her] the option to purchase such services (which [s]he then chose to do on [her] own)." *Whiteman*, 2025 WL 869409, at *3. So too here.

Plus, American's statement doesn't disclaim its financial interest in the transaction. The statement is silent on any fees American received from AGA. Thus, Trotta doesn't have a colorable claim that she was "induced by mistake, coercion, or request" to buy travel assistance. Appellant Br. at 7 (internal quotation marks omitted). And, as some courts have recognized, "[i]t seems self-evident that [American] would be compensated" by AGA for access to a "valuable and highly sought distribution channel." *Donoff v. Delta Air Lines, Inc.*, No. 18-81258-CV, 2020 WL 1226975, at *9 (S.D. Fla. Mar. 6, 2020).

In sum, American made money from Trotta's purchase of travel insurance from AGA. "But making money is still allowed." *Gerboc*, 867 F.3d at 679. American's continued possession

of that money isn't inequitable.  So Trotta hasn't stated a claim for unjust enrichment under Michigan law.

*        *        *

We affirm.