Michael R. BENNETT, Plaintiff,

v.

T–MOBILE USA, INC.; Samsung Tele-communications America, Inc.; Motorola, Inc., and Does 1 through 100 inclusive, Defendants.

No. CV 08–4943 RSWL (JTLx).

United States District Court,
C.D. California.

Dec. 22, 2008.

Plaintiff, pro se.

Terrence J. Dee, Michael B. Slade, Daniel R. Lombard, Kirkland & Ellis LLP, Chicago, IL, Rebecca J. Wahlquist, Kirkland & Ellis LLP, Los Angeles, CA, for Defendant Motorola, Inc.

Michael P. McNamara, Kirsten H. Spira, McNamara, Spira, and Smith, Los Angeles, CA, for Defendant T-Mobile USA, Inc.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS COMPLAINT

RONALD S.W. LEW, Senior District Judge.

Before this Court are Defendant Motorola's Motion to Dismiss the Complaint [13] and Defendant T-Mobile's Motion for Joinder in this Motion [16]. The Court took these Motions under submission on December 2, 2008. Having reviewed the filings of the parties, the Court **HEREBY FINDS AND HOLDS AS FOLLOWS:**

As a preliminary matter, good cause having been shown, Defendant T-Mobile's Motion for Joiner in Defendant Motorola's Motion to Dismiss is **GRANTED.**

### I. Background

Plaintiff Michael R. Bennett purchased a Samsung cell phone in August of 2003 from service provider T-Mobile. Plaintiff purchased a Motorola cell phone in December of 2005, again from service provider T-Mobile. Plaintiff claims that beginning in April of 2006, he suffered a "sudden hearing loss in his right ear, vertigo, loss of equilibrium, and other personal injuries," allegedly caused by his use of these cell phones. The essence of his claims is that the injuries were caused by electromagnetic radiation ("radio frequency" or "RF" emissions) emanating from the cell phones due to "improper and unsafe design, manufacturing and production."

Plaintiff originally filed this Complaint in Los Angeles Superior Court on April 28, 2008. The Complaint alleges five causes of action, including: (1) negligence/negligent misrepresentation; (2) strict liability for failure to warn; (3) strict liability for design defect; (4) breach of implied warranties; and (5) false advertising. Defendants removed this Matter to this Court

on the basis of diversity jurisdiction on July 28, 2008.

Defendants now move to dismiss the Complaint based on two distinct arguments: (1) Plaintiff's claims are preempted by federal law; and (2) Plaintiff's individual claims fail as a matter of law.

## II. Federal Preemption

### A. *Legal Standard*

■ State laws and causes of action may be preempted by federal law in any of three ways: (1) express preemption; (2) field preemption; and (3) conflict preemption. Express preemption exists "where Congress enacts an explicit statutory command that state law be displaced." *Ting v. AT & T*, 319 F.3d 1126, 1135 (9th Cir. 2003).

■ Implied preemption, on the other hand, requires the court to imply "Congress' intent from the statute's structure and purpose." *Id.* at 1135–36; *Sprietsma v. Mercury Marine*, 537 U.S. 51, 64, 123 S.Ct. 518, 154 L.Ed.2d 466 (2002). Field preemption may be inferred "where the scheme of federal regulation is sufficiently comprehensive to make reasonable the inference that Congress left no room for supplementary state regulation." *In re Cybernetic Services, Inc.*, 252 F.3d 1039, 1045 (9th Cir.2001). Conflict preemption is found "when compliance with both state and federal law is impossible" or where the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* at 1045–46.

■ There is generally a presumption against preemption when the federal law at issue involves areas generally reserved to the states, such as health and safety issues. *See Farina v. Nokia*, 578 F.Supp.2d 740, 755 (E.D.Pa.2008). However, "'when the State regulates in an area where there has been a history of

significant federal presence,' the presumption usually does not apply." *Ting*, 319 F.3d at 1136 (quoting *United States v. Locke*, 529 U.S. 89, 108, 120 S.Ct. 1135, 146 L.Ed.2d 69 (2000)).

■ This Court does not find that a presumption against preemption is warranted. Although Plaintiff's claims assert matters of health and safety, the telecommunications industry generally, and RF emissions from cell phones specifically, have long been regulated by Congress and the Federal Communications Commission. Given the strong federal presence of regulation in this industry, a presumption against preemption is unwarranted. *See Farina*, 578 F.Supp.2d at 756 ("Given this history of significant federal regulatory presence [in the telecommunications industry], we approach the issue of implied preemption from the standpoint that traditional state interests are lacking.").

### B. *Conflict Preemption*

■ For conflict preemption to apply, a particular state statute need not be in conflict with federal law. Rather, causes of action relying upon state common law may be preempted if they present obstacles to federal objectives. *Farina*, 578 F.Supp.2d at 761. Here, the fact that Plaintiff's claims assert state common law causes of action rather than a particular state statute does not prevent conflict preemption from barring the claims.

■ Defendants argue that Plaintiff's claims are conflict preempted because they stand as obstacles to the accomplishment and execution of the full purposes and objectives of Congress. Defendants argue that through the Federal Communications Act, Congress delegated authority to the Federal Communications Commission to create national uniformity in wireless telecommunications. According to Defendants, to permit Plaintiff to assert the

state common law claims in this Complaint would harm this objective of national uniformity.

The Court finds Defendants' argument persuasive. As noted by the Eastern District of Pennsylvania in a similar case, "state standards of care differ from state to state, and the absence of any consistent federal warning requirement may subject such manufacturers to considerable liability based on varying standards, with no benchmark that they should follow." *Farina*, 578 F.Supp.2d at 762. Hence, Congress delegated authority to the FCC to create uniform rules for telecommunications, which, by its very nature, requires consistency amongst the states. "Congress has given the FCC exclusive authority over every technical aspect of radio communication ... and broad authority to issue regulations to implement the [Federal Communications Act]." *Id*. Furthermore, "technical standards and ... operations rules are to apply nation-wide ... without regard to state boundaries or varying local jurisdictions." *Id*. at 763. The "essential objective" in creating wireless policy is to "achieve nationwide compatibility." *Id*.

Based on this delegated authority, the FCC has adopted specific guidelines regarding RF emissions. *See Guidelines for Evaluating the Environmental Effects of Radiofrequency Radiation*, 12 F.C.C.R 13494 (1997). Specifically, the Code of Federal Regulations includes various provisions imposing technical standards for RF emissions. *See e.g.* 47 C.F.R. §§ 27.52 and 1.1310. The goal of these Guidelines is to "provide a proper balance between the need to protect the public and workers from exposure to potentially harmful RF electromagnetic fields and the requirement that [the] industry be allowed to provide telecommunications services to the public in the most efficient and practical manner possible." *Guidelines for Evaluating the Environmental Effects*, 12 F.C.C.R. at 13496.

To allow state claims such as these asserted by-Plaintiff to proceed would be to question the judgment of the FCC on the issue of RF emissions standards. Because the FCC has determined the optimal level of safe RF emissions and licenses phones and service providers based on these levels, a jury verdict declaring these phones unsafe "unquestionably trample[s] upon the FCC's authority to determine the maximum standard for RF emissions." *Farina*, 578 F.Supp.2d at 769.

Plaintiff's allegations are that the RF levels emitted from Defendants' products are unsafe and that Defendants failed to warn of these health risks. But, notably, Plaintiff does not claim that Defendants' products actually *exceed* the RF levels allowed by FCC regulations. Rather, Plaintiff claims that these phones are unsafe even though they do comply with FCC standards. Therefore, Plaintiff's allegations are a collateral attack on the FCC regulations themselves. Allowing such claims would be to second-guess the balance reached by the FCC in setting RF emission standards under its delegated authority.

Accordingly, the Court finds that Plaintiff's claims are conflict preempted and therefore cannot stand. To allow state law challenges to the judgment of Congress and the FCC with respect to allowable levels of RF emissions would interfere with the goal of national uniformity in telecommunications policy. Therefore, Plaintiff's claims are conflict preempted and fail to state a claim upon which relief can be granted. Accordingly, Defendants' Motion to Dismiss the Complaint is **GRANTED** and the Complaint is hereby **DISMISSED**. Because the Court reaches this conclusion with respect to conflict preemption, Defendants' arguments regarding

express preemption, field preemption, and failure of the claims as a matter of law need not be addressed.

**IT IS SO ORDERED.**