[940 NYS2d 65]

Susan Scott Stanley et al., Appellants, v Amalithone Realty, Inc., et al., Respondents.

First Department, March 13, 2012

## APPEARANCES OF COUNSEL

*Whitney North Seymour, Jr.*, New York City, and *Gabriel North Seymour*, New York City, for appellants.

*Brown Rudnick LLP*, New York City (*Wayne F. Dennison* and *Katherine S. Bromberg* of counsel), for respondents.

## OPINION OF THE COURT

Acosta, J.

Plaintiffs are apartment residents seeking, inter alia, the removal of a cell phone tower from a nearby rooftop based on allegations that the tower's radio frequency emissions present a danger to health and constitute a nuisance. Defendant Amalithone Realty, Inc. owns the building with the cell phone tower, 113-115 University Place, in Manhattan. Defendant Amalgamated Lithographers of America, Local One, occupies Amalithone's building, and is the building's alleged beneficial owner. AT&T, a nonparty, leases or licenses the rooftop space where the cell phone tower was constructed and is the owner of the tower. At issue in this appeal is whether an action against the continued maintenance and operation of the rooftop cell phone tower is preempted by federal standards permitting the subject radio frequency radiation (RFR). We hold that plaintiffs' claims

are preempted by the Telecommunications Act of 1996 (TCA). We thus affirm the dismissal of the complaint.

Background

Plaintiffs and their minor son have resided in an apartment on East 12th Street in Manhattan since about April 2007. Shortly after occupying the apartment, plaintiffs allegedly began to experience ill health. An environmental consultant and an electrical engineer they hired allegedly found high levels of radio frequency radiation in their apartment. Believing that the cell phone tower on defendant's nearby building is responsible for their ill health, plaintiffs' counsel wrote on November 2, 2009 to Amalithone requesting removal of the cell phone tower and enclosing a list of recent foreign studies of the health effects of cell antennas. After Amalithone failed to respond to plaintiffs' letter, plaintiffs sent a follow up letter on December 2, 2009. On December 17, 2009, Michael Minieri, the building manager of 113-115 University Place, sent a fax to plaintiffs' counsel from the office of defendant Amalgamated Lithographers of America, Local One enclosing an AT&T safety compliance certification indicating that the cell tower met Federal Communications Commission (FCC) RFR regulations on July 5, 2009.

On March 16, 2010, plaintiffs filed a complaint pleading numerous causes of action, including claims for nuisance, trespass and an unlawful taking. In their prayer for relief, plaintiffs seek: a permanent injunction requiring the removal of all cell transmission antennas; damages for personal and property injury; punitive damages; and a declaratory judgment that they were entitled not to be subjected to unreasonable levels of RFR in their home from wireless transmission antennas. Defendants moved to dismiss the complaint pursuant to CPLR 3211 on various grounds, including federal preemption and the failure to join an indispensable party. In opposition, plaintiffs argued that preemption does not apply because they are not seeking to "regulate" radio frequency emissions and defendants were the primary and necessary parties to the lawsuit.

The motion court dismissed the complaint, finding nonparty AT&T indispensable under CPLR 1001 (b) because it would be prejudiced unless able to address the ultimate relief sought, namely, removal of its cell phone tower (31 Misc 3d 995 [2011]). The court also found that plaintiffs would have a meaningful forum in the event of dismissal, namely, a petition to the FCC to deny AT&T's license renewal and an opportunity to seek review of the resulting decision in federal court (id.).

The motion court expressly declined to address the preemption issue in its opinion. We, however, find that issue dispositive and conclude that plaintiffs' claims are preempted by federal law. Accordingly, we affirm the dismissal of the complaint.

Federal Preemption

The TCA, which is part of the Federal Communications Act of 1934 (FCA) and is administered by the FCC,[1] restricts the ability of states to regulate cellular towers through state statutes and state common law.[2] The TCA imposes certain express limitations on the exercise of the states' traditional authority over the placement of facilities for wireless communications (see Rancho Palos Verdes v Abrams, 544 US 113, 115 [2005]). In pertinent part, the TCA provides: "No State or local government or instrumentality thereof may regulate the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the Commission's regulations concerning such emissions." (47 USC § 332 [c] [7] [B] [iv].)[3] In addition to the specific restrictions on state regulatory powers in the TCA, the FCC has used its somewhat circumscribed preemption authority under that statute to issue an interpretive ruling preempting state and local governments from regulating the operation of personal wireless facilities that comply with FCC regulations for RF emissions (Cellular Phone Taskforce v Federal Communications Commn., 205 F3d 82, 95 [2d Cir 2000], cert denied 531 US 1070 [2001], referring to In the Matter of Guidelines for Evaluating the Envtl. Effects of Radiofrequency Radiation, 11 FCCR 15123 [1996]).

When reviewing a preemption defense, we first consider whether our analysis must be guided by the presumption against

---

1. Under the FCA, the FCC is responsible for regulating wire and radio communication service nationwide (see generally 47 USC § 151 et seq.).

2. In determining the preemptive scope of 47 USC § 332, the FCC has concluded that "judicial action constitutes a form of state regulation" (In re Wireless Consumers Alliance, Inc., 15 FCCR 17021, 17027 [2000]). We find the FCC's conclusion persuasive and will treat, for the purposes of our preemption analysis, common-law causes of action as being no different from claims based on a state statute or state regulation (see Bennett v T-Mobile USA, Inc., 597 F Supp 2d 1050, 1053 [CD Cal 2008]; Murray v Motorola, Inc., 982 A2d 764, 777 [DC 2009]).

3. For the purpose of interpreting 47 USC § 332 (c) (7) (B) (iv), we treat the term "environmental effects" as interchangeable with "health concerns" (Cellular Tel. Co. v Town of Oyster Bay, 166 F3d 490, 495 n 3 [2d Cir 1999]; T-Mobile Northeast LLC v Town of Ramapo, 701 F Supp 2d 446, 460 [SD NY 2009]).

preemption.[4] In so doing, we begin with the "assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress" (*Wyeth v Levine*, 555 US 555, 565 [2009] [internal quotation marks omitted]).[5] Indeed, the presumption has particular force where an act of Congress implicates a state's historic "police powers" (*see Medtronic, Inc. v Lohr*, 518 US 470, 485 [1996]). We thus interpret the relevant portions of the TCA with the understanding that we should favor a reading of the statute that disfavors preemption (*see Altria Group, Inc. v Good*, 555 US 70, 77 [2008] ["(W)hen the text of a pre-emption clause is susceptible of more than one plausible reading, courts ordinarily 'accept the reading that disfavors pre-emption' "]; *Hillsborough County v Automated Medical Laboratories, Inc.*, 471 US 707, 716 [1985] [requiring a "strong" showing to establish implicit preemption]).

█ In deciding whether state law is preempted by the TCA (or, more broadly, any federal law), "[t]he purpose of Congress is the ultimate touchstone in every preemption case" (*Altria Group, Inc.*, 555 US at 76 [internal quotation marks omitted]).[6] The Supreme Court has explained that there are three ways of establishing Congress' preemptive intent:

> "[1] Congress may indicate pre-emptive intent through a statute's express language or through its structure and purpose. If a federal law contains an

---

4. If the presumption against preemption is applicable, the nature of the Congress' preemption is irrelevant (*see Wyeth v Levine*, 555 US 555, 565 n 3 [2009]; *Altria Group, Inc. v Good*, 555 US 70, 76 [2008]).

5. Thus, the mere fact that the federal government has also been regulating in an area for a particularly long time—as is true in the area of telecommunications—does not per se undercut the presumption against preemption (*compare Wyeth v Levine*, 555 US 555, 565 n 3 [2009] [applying the presumption even though the Food and Drug Administration has been regulating in the area for almost a century], *with United States v Locke*, 529 US 89, 107-109 [2000] [declining to apply the presumption where "there is no beginning assumption that concurrent regulation by the State is a valid exercise of its police powers" because of the overwhelmingly federal nature of the area, i.e., national and international maritime commerce, in which the state was attempting to regulate]).

6. We may also consider a federal agency's views respecting preemption under the statute it administers (*cf. Wyeth*, 555 US at 576-577; *Geier v American Honda Motor Co.*, 529 US 861 [2000]; *Lohr*, 518 US 470; *Hillsborough County v Automated Medical Laboratories, Inc.*, 471 US 707 [1985]). However, "we [need] not defer to an agency's ultimate conclusion about whether state law should be pre-empted" (*PLIVA, Inc. v Mensing*, 564 US —, —, 131 S Ct 2567, 2575 n 3 [2011], citing *Wyeth*, 555 US at 576).

express pre-emption clause, it does not immediately end the inquiry because the question of the substance and scope of Congress' displacement of state law still remains. Pre-emptive intent may also be inferred if [2] the scope of the statute indicates that Congress intended federal law to occupy the legislative field, or [3] if there is an actual conflict between state and federal law." (*Id.* [citations omitted].)

Since 47 USC § 332 (c) (7) (B) (iv) does "not expressly command the displacement of state [common-law] claims concerning wireless service [towers]," we do not believe that the TCA should be interpreted to expressly preempt the plaintiffs' common-law claims (*see Jasso v Citizens Telecom. Co. of Cal., Inc.*, 2007 WL 2221031, *6, 2007 US Dist LEXIS 54866, *18 [ED Cal 2007] [internal quotation marks omitted]).

We next address whether the narrowest ground for preemption—conflict preemption—is sufficient to preempt the plaintiffs' claims. To the extent that a law or regulation of this state conflicts with the TCA of 1996 or any of the FCC's valid regulations under that statute, it is preempted and has no effect (*see Capital Cities Cable, Inc. v Crisp*, 467 US 691, 699 [1984], citing *Fidelity Fed. Sav. & Loan Assn. v De la Cuesta*, 458 US 141, 153-154 [1982]). A conflict between state and federal law arises "when it is impossible for a private party to comply with both state and federal law or when state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" (*PLIVA, Inc. v Mensing*, 564 US —, —, 131 S Ct 2567, 2587 [2011] [internal quotation marks and citation omitted]). "What is a sufficient obstacle is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects" (*Crosby v National Foreign Trade Council*, 530 US 363, 373 [2000]).

▮ Here, we find that such a conflict exists. The FCC, pursuant to its regulatory authority, has set forth maximum permissible exposure limits for RF radiation (*see* 47 CFR 1.1310). Plaintiffs allege that high levels of RF emissions, measuring 30,000 microwatts per square meter, were found in various areas of their apartment. When plaintiffs' measurements are converted to the unit of measurement used by the FCC, it is apparent that the levels found in plaintiffs' apartment are entirely within the permissible range of the FCC's guidelines and therefore consistent with federal law. In any event, defendants

gave plaintiffs a certificate of compliance with the FCC regulations provided to them by AT&T in connection with plaintiffs' concerns about the RF emissions. That certificate, issued by AT&T, undisputedly reflects compliance with the FCC's regulations.

Although plaintiffs assert that they are not asking this Court to regulate RF emissions, all of plaintiffs' claims are premised on the notion that the RF emissions emanating from 113-115 University Place are unsafe or dangerous. Entertaining plaintiffs' claims would require us to second guess the FCC's standards and engage in our own form of judicial regulation of RF emissions. Because "allow[ing] state law challenges to the judgment of Congress and the FCC with respect to allowable levels of RF emissions would interfere with the goal of national uniformity in telecommunications policy,'"[7] we believe that the presumption against preemption is overcome by the need to preclude the conflict between state and federal law that would arise were we to entertain plaintiff's state law claims. In short, AT&T's cell phone towers are in compliance with FCC regulations and thus not subject to the kind of state regulation that plaintiff seeks. Consequently, we hold that plaintiffs' claims are preempted on the grounds of conflict preemption (*Bennett*, 597 F Supp 2d at 1053; *cf. Matter of Procedures for Reviewing Requests for Relief from State & Local Regulations Pursuant to Section 332 [c] [7] [B] [v] of the Communications Act of 1934*, 15 FCCR 22821, 22828 [2000] ["'(A) local government may not require a facility to comply with RF emissions or exposure limits that are stricter than those set forth in the Commission's rules, and it may not restrict how a facility authorized by the Commission may operate based on RF emissions"]; *Perrin v Bayville Vil. Bd.*, 2008 NY Slip Op 32401[U], *6-7 [2008]).

Were we not affirming on preemption grounds, we would nonetheless affirm on the ground relied on by the motion court, i.e., failure to join an indispensable party.

Accordingly, the judgment of the Supreme Court, New York County (O. Peter Sherwood, J.), entered July 8, 2011, dismissing the complaint, should be affirmed, without costs. The appeal

---

**7.** (*Bennett*, 597 F Supp 2d at 1053; *accord Jasso*, 2007 WL 2221031,*7-8, 2007 US Dist LEXIS 54866, *26 ["'(The) determination (that plaintiffs seek) would undo the FCC's balancing between the need to protect the public and workers from exposure to potentially harmful RF electromagnetic fields and the requirement that the industry be allowed to provide telecommunications services to the public" (internal quotation marks omitted)]).

from the order, same court and Justice, entered March 23, 2011, which granted defendants' motion to dismiss the complaint, should be dismissed, without costs, as subsumed in the appeal from the judgment.

ANDRIAS, J.P., SAXE, SWEENY, ACOSTA and MANZANET-DANIELS, JJ., concur.

Judgment, Supreme Court, New York County (O. Peter Sherwood, J.), entered July 8, 2011, affirmed, without costs. Appeal from order, same court and Justice, entered March 23, 2011, dismissed, without costs, as subsumed in the appeal from the judgment.