**Grunberg 77 LLC v Cellular Telephone Co.**

2024 NY Slip Op 32428(U)

July 10, 2024

Supreme Court, New York County

Docket Number: Index No. 160060/2019

Judge: Leslie A. Stroth

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

**PRESENT:** <u>HON. LESLIE A. STROTH</u>

*Justice*

------------------------------------------------------------------X

GRUNBERG 77 LLC,

Plaintiff,

- v -

CELLULAR TELEPHONE COMPANY d/b/a AT&T
WIRELESS n/k/a AT&T,

Defendant.

------------------------------------------------------------------X

| | |
|---|---|
| **PART** | **12M** |
| **INDEX NO.** | 160060/2019 |
| **MOTION DATE** | 06/02/2022 |
| **MOTION SEQ. NO.** | 005 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 005) 1, 61, 100, 103, 123, 128, 129, 130, 131, 132, 133, 134, 135, 136, 137, 138, 139, 140, 141, 142, 143, 144, 145, 146, 147, 148, 149, 150, 151, 152, 153, 154, 155, 156, 157, 158, 159, 160, 161, 162, 163, 164, 165, 166, 167, 168, 169, 170, 171, 172, 173, 174, 175, 176, 177, 178, 179, 180, 181, 182, 183, 184, 185, 186, 187, 188, 189, 190, 191, 192, 193, 194, 195, 196, 197, 198, 199, 200, 201, 202, 203, 204, 205, 206, 207, 208, 209, 210, 211, 212, 213, 214, 215

were read on this motion to/for <u>        JUDGMENT – SUMMARY      </u>.

In this motion, defendant moves for an order of summary judgment that dismisses plaintiff's amended complaint in its entirety, with prejudice (NYSCEF Doc. No. 128). Plaintiff opposes and cross-moves for an order of partial summary judgment for $93,499.20 plus interest, costs, expenses, and attorney's fees (NYSCEF Doc. No. 171). For the reasons below, the court grants defendant's motion to the extent of dismissing the second through fourth causes of action in their entirety, as well as the first cause of action to the extent that it seeks additional rent after defendant's termination notice and payment. The Court further grants plaintiff's cross-motion as the issue of liability only.

According to the verified amended complaint (complaint), defendant leased property at 66 West 77th Street in Manhattan from defendant's predecessor-in-interest on or about August 1, 2001. Paragraph 1 of the lease states that defendant leased 336 square feet of a room/cabinet space and "space on the structure and such easements as are necessary for the antennas and

**160060/2019 GRUNBERG 77 LLC vs. CELLULAR TELEPHONE COMPANY**
**Motion No. 005**

Page 1 of 21

initial installation" (NYSCEF Doc. No. 134, ¶ 1). Paragraph 2 states that defendant could use the leased area

> "for the transmission and reception of communications signals and the installation, maintenance, operation, repair and replacement of its communication fixtures and related equipment, cables, accessories and improvements (collectively the "Communication Facility["]) and any other items necessary to the successful and secure operation of the Communication Facility. . . ; Tenant has the right to make Property improvements, alterations or additions ("Tenant Changes") . . . . Tenant has the right to . . . increase the number of antennas by twenty-five (25%) percent or relocate the Communication Facility within the Premises . . . during the term of this Agreement. Landlord has 15 days from receipt of construction drawing(s) for the installation of the Communication Facility (the "Construction Drawings") to approve or request modifications of the Construction Drawings, if Landlord takes no action within such 15[-] day period the Construction Drawings are deemed approved by the Landlord" (id., ¶ 2).

As the lease provided for 12 antennas, the maximum number of antennas, with the 25% increase, was 15. The lease stated that the parties were responsible for compliance with environmental and hygiene laws, including those governing radio frequency (RF) emissions from the antennas, and that defendant would indemnify plaintiff upon a finding of noncompliance.

The original lease included architectural drawings for the leased spaces (id., *12-14 [drawings]). Ariel Grunberg, a member of plaintiff LLCs, initialed his approval of each of the three drawings (see id.). These drawings depicted 12 antennas along the building's perimeter (NYSCEF Doc. No. 130, ¶ 16). After the parties executed the lease, defendant's design plans changed. Ultimately, defendant submitted a design plan to the city for building permits that moved eight of the twelve antennas to the roof's bulkhead (id., ¶ 19). Robert McKinnon, whom the parties do not otherwise identify, signed the application as plaintiff's agent (NYSCEF Doc. No. 139, *14). Further, the Landmarks Preservation Commission for New York City (LPC) mailed Ariel Grunberg a permit, issued on February 25, 2002, which stated that it had approved

**160060/2019 GRUNBERG 77 LLC vs. CELLULAR TELEPHONE COMPANY**
**Motion No. 005**

**Page 2 of 21**

2 of 21

the installation of "twelve telecommunications panel antennas at the roof, where eight (8) antennas will be mounted to the elevator and stair bulkheads respectively . . . ." (NYSCEF Doc. No. 140, *1). Defendant asserts that Ariel Grunberg was aware of the placement of the antennas, as he had observed the construction work (NYSCEF Doc. No. 130, ¶ 24 [citing NYSCEF Doc. No. 135 [Ariel Grunberg dep excerpts, p 60 lines 17-25][1]).

Defendant also notes that over the years, Ariel Grunberg approved modifications and changes to the equipment (*id.*, ¶ 29 [citing NYSCEF Doc. Nos. 143-145, 147]), including approved alterations in 2010 (NYSCEF Doc. Nos. 147). Defendant states that the compliance reports by the parties' respective experts addressed the RF emissions standards and provided the measures necessary for the alterations to be compliant with the FCC rules (NYSCEF Doc. No. 130, ¶¶ 39-47). The final approval, which Ariel Grunberg provided by email on January 3, 2014, stated that after a consultation with his expert, EBI Consulting, he "authorize[d] the upgrade at all three sectors as per the proposal submitted and further installing the additional signage as recommended by EBI consulting in their report" (NYSCEF Doc. No 147, *2 [Jan 3, 2014, email]). According to plaintiff, it approved the changes "based upon material misrepresentations" in defendant's proposed plans (NYSCEF Doc. No. 201, ¶ 26).

According to defendant, problems arose in 2017, when plaintiff made plans to install a new elevator in the building; the elevator shaft was below the equipment room. Defendant contends that the installation required the relocation of the entire equipment room despite defendant's undisputed rights under the lease (*see* NYSCEF Doc. No. 130, ¶¶ 48-50). In its counterstatement of material facts, plaintiff insists that defendant "never had the right to exclusive use and occupancy of the Equipment Room," and that it only required defendant to

---

[1] The other deposition page citations do not strongly support defendant's position.

**160060/2019  GRUNBERG 77 LLC vs. CELLULAR TELEPHONE COMPANY**          **Page 3 of 21**
**Motion No.  005**

[* 3]

evacuate a portion of the room (NYSCEF Doc. No. 201, ¶ 48). Additionally, although the parties

agree that plaintiff stated that it would not renew the lease in four years unless defendant

complied, plaintiff stresses that it informed defendant it would not renew the lease unless

defendant "partially vacate[d] the Equipment Room" (*id.*, ¶ 51 [underlining in original]).

The parties dispute what occurred in their subsequent communications. Defendant

suggests that plaintiff withheld its consent to defendant's proposed modifications, challenged the

bulkhead installation as improper for the first time, threatened to sully defendant's name in the

tabloids, refused defendant's request for a rent reduction and a promise not to terminate, and

incorrectly stated that defendant had 20 antennas on the roof. Plaintiff denies that it challenged

the bulkhead installation and states that defendant mischaracterized its so-called threat and other

conduct. As for the number of antennas, plaintiff's counterstatement of facts asserts that when it

counted the antennas, it considered each antenna with dual frequencies and increased RF

emission levels as two antennas. The court notes that in an August 10, 2018, email, plaintiff

instead claimed that defendant "currently have 20 antenna type equipment on the building"

(NYSCEF Doc. No. 159, *37).

Both sides agree that there was no resolution of the dispute by August 2018. On August

20, 2018, plaintiff's counsel sent a notice to cure to defendant, stating that defendant breached

the lease by

> (1) Installing new and additional antennas on the Building without
> the Landlord's express or implied consent in violation of
> Paragraphs 1 and 2 of the Lease Agreement. Specifically,
> Tenant has installed and currently operates more than 15
> antennas on the Building . . . .
> (2) Installing new equipment on the Building without the
> Landlord's express or implied consent in violation of
> Paragraphs 1 and 2 of the Lease Agreement. Specifically,
> Tenant's installation of equipment associated with the

160060/2019   GRUNBERG 77 LLC vs. CELLULAR TELEPHONE COMPANY                    Page 4 of 21
Motion No. 005

4 of 21

[* 4]

aforementioned . . . antennas exceeds the Permitted us for the Demised Premises . . . .

(3) Occupying materially more than 336 square feet of room/cabinet space at the Building . . . . Specifically, Tenant has installed equipment within the elevator shaft room on the roof of the Building that occupies materially more than the 336 square feet allotted for the Demised Premises without the Landlord's express or implied consent.

(4) Occupying materially more space on the roof of the Building than authorized under the Permitted Use . . . . Specifically, Tenant has installed equipment on the roof of the Building . . . and chained-off portions of the roof . . . without the Landlord's express or implied consent (NYSCEF Doc. No. 132 [complaint with attachments], *21-22; *see also* NYSCEF Doc. No. 155, *3 [document at issue]).

The notice to cure also sought "attorney's fees in connection with securing Tenant's compliance with the terms and conditions of the Lease Agreement" (NYSCEF Doc. No. 132, *22; *see also* NYSCEF Doc. No. 134, ¶ 14 [a] [2] ["Tenant's failure to perform any other term or condition under this Agreement within forty-five (45) days after receipt of written notice from Landlord" will be considered a default absent specified circumstances]).

After plaintiff served the notice to cure on defendant, the latter tendered rent for the month of November 2018. However, plaintiff explains that it rejected the rent to preserve the viability of its notice to cure. Plaintiff continued to reject defendant's proffered rent through May 28, 2019 (*see* NYSCEF Doc. No. 198, ¶ 3; NYSCEF Doc. No. 199). According to plaintiff, the total rent due for these months is $93,299.20 (NYSCEF Doc. No. 201, ¶ 122).

After months of failed negotiations, plaintiff's counsel notified defendant that its "tenancy has been terminated by reasons of said failure to comply with the cure notice" (NYSCEF Doc. No. 159, *3-4 [Feb 25, 2019, Sieratzki email]). In July 2019, defendant sent a termination fee check in the amount of $140,248.80 (*see* NYSCEF Doc. No. 166, *4 [Aug 21, 2019, Manzo email]).

160060/2019   GRUNBERG 77 LLC vs. CELLULAR TELEPHONE COMPANY
Motion No. 005

Page 5 of 21

5 of 21

Defendant vacated the premises in September 2019, but neither repaid the rent that plaintiff had rejected nor paid rent through September 30, 2021, when the lease was to expire. As a first cause of action, plaintiff seeks $426,113.40 for this period, which includes $93,299.20, the amount allegedly due from the rent checks plaintiff originally rejected, and additional rent allegedly due through the end of the lease period. Plaintiff's second cause of cause of action seeks $4,483,295.41, based on the purported fair market rent of additional space defendant allegedly used between October 16, 2013 and June 8, 2019 (*see* NYSCEF Doc. No. 162). The third and fourth causes of action seek the same $4,283,295.41 based on theories of unjust enrichment and quantum meruit, respectively. The fifth cause of action seeks attorney's fees.

In its verified amended answer (NYSCEF Doc. No. 133), defendant denies "that [defendant] used any space at Plaintiff's property that it was not entitled to use, and denies any liability to Plaintiff" (*id.*, ¶ 14). As affirmative defenses, the answer asserts, among other things, that defendant merely asserted its rights under the lease, that plaintiff did not mitigate its alleged damages, and that laches and/or the statute of limitations partly or completely bars plaintiff's claims. Finally, the answer cites 42 U.S.C. § 332(c) (7) (B) (iv) in support of its affirmative defense of federal preemption.[2]

Discovery is complete, and, on March 9, 2022, plaintiff filed the note of issue (NYSCEF Doc. No. 123). This motion and cross-motion followed. The court evaluates the parties' arguments in light of the prevailing standard, that the moving parties must make a prima facie showing of their right to relief. At that point, the burden shifts, and the opposing parties must

---

[2] Defendant also asserts an affirmative defense based on an alleged settlement between the parties, and it subsequently moved to enforce the agreement (NYSCEF Doc. No. 61). However, the trial court denied the motion, finding that there was no binding agreement (NYSCEF Doc. No. 100, also avail at *Grunberg 77 LLC v Cellular Tel. Co.*, 2021 WL 2226425, 2021 NY Misc LEXIS 3100 [Sup Ct, NY County 2021]).

**160060/2019  GRUNBERG 77 LLC vs. CELLULAR TELEPHONE COMPANY**
**Motion No. 005**

**Page 6 of 21**

submit admissible evidence establishing that material issues of fact exist (*De Lourdes Torres v Jones*, 26 NY3d 742, 763 [2016]). With respect to each party's application, the court must "indulge all available inferences" in favor of the nonmoving party (*id.*).

**Federal Preemption**

In its motion, defendant raises the threshold issue of federal preemption. It argues that plaintiff's claims related to RF emissions are preempted under 42 USC § 332 (c) (7) (B) (iv). That provision of the FCC Telecommunications Law states:

> "No State or local government or instrumentality thereof may regulate the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the Commission's regulations concerning such emissions."

In support, defendant cites *Stanley v Amalithone Realty, Inc.* (94 AD3d 140, 143 n 2 [1st Dept 2012]), which states that that, because "'judicial action constitutes a form of state regulation'" (quoting *Matter of Wireless Consumers Alliance, Inc.*, 15 FCCR 17021, 17027 [2000]), common-law causes of action are "no different from claims based on a state statute or state regulation" in the context of a preemption analysis (*Stanley*, 94 AD3d at 143 n 2). The *Stanley* Court relied, in part, on *Bennett v T-Mobile USA, Inc.* (597 F Supp 2d 1050, 1053 [CD Cal 2008]), which determined that a plaintiff's personal injury claim against a cellphone company was preempted by the federal RF emissions guidelines.

Plaintiff argues, in response, that none of its claims are preempted. It distinguishes *Stanley* from the case at hand, noting that the plaintiffs in *Stanley* were residential tenants who complained that the RF emissions the rooftop tower of a nearby building were making them sick. Here, plaintiff contends that it merely seeks additional rent for the period from October 16, 2013, to June 8, 2019, for the space occupied by chain barricades on the roof that defendant installed to

**160060/2019  GRUNBERG 77 LLC vs. CELLULAR TELEPHONE COMPANY**
**Motion No.  005**

Page 7 of 21

[* 7]

7 of 21

bring the RF emissions into compliance with federal regulations, the space beyond the chains based on the emissions reports, and cable runs that it had not approved (*see* NYSCEF Doc. No. 201 [counter-statement of material facts], ¶¶ 26, 95).[3]

Defendant's reply contends that plaintiff's attempts to distinguish *Stanley* are unpersuasive because although the case involved claims for nuisance, personal injury, and trespass, the First Department indicated that preemption applied to all common-law causes of action (NYSCEF Doc. No. 205 [quoting *Stanley*, 94 AD3d at 143 n 2). Also according to defendant, the RF emissions claim essentially asserts trespass, a common-law cause of action, and therefore it is preempted. Additionally, defendant argues that any claim that the RF emissions exceeded the regulatory limits is preempted – and, in addition, is contradicted by the evidence.

Defendant challenges plaintiff's contention that it does not seek additional compensation based on the level of RF emissions. In support, defendant points to statements in which plaintiff referred to the allegedly unsafe level of RF emissions. For example, in its amended response to defendant's interrogatories, plaintiff explained that it sought compensation for defendant's constructive occupation of 2,197 square feet on the roof, which existed

> "by virtue of the radio frequency ("RF") emissions from the telecommunications equipment it had installed which exceeded health and safety parameters established by the Federal Communications Commission. Specifically, upon information and belief, approximately 1,972 square feet of the northern portion of the roof and 225 square feet of the southern portion of the roof were constructively occupied by AT&T due to unsafe RF levels in these area" (NYSCEF Doc. No. 163, ¶ 16).

---

[3] *See also* NYSCEF Doc. No. 176, p 74 line 11 – p 75 line 21, p 89 line 7 – p 90 line 9 [Dep of Property Manager Dakota Hendey, describing the calculation of the rent purportedly due to space occupied by and beyond the barriers].

**160060/2019  GRUNBERG 77 LLC vs. CELLULAR TELEPHONE COMPANY**
**Motion No. 005**

Page 8 of 21

8 of 21

[* 8]

Plaintiff's reply in further support of its cross-motion does not respond to these arguments.

Preemption exists "with reference to the . . . Supremacy Clause of the United States Constitution, which provides that federal laws 'shall be the supreme Law of the Land; and the Judges in every state shall be bound thereby'" (*People v First Am. Corp.*, 18 NY3d 173, 179 [2011], quoting US Const., art VI, cl 2). As relevant here, statutory preemption exists when it is clear from the plain language of the statute (*435 Cent. Park W. Tenant Assn. v Park Front Apts., LLC*, 164 AD3d 411, 413 [1st Dept 2018]). Where the federal law preempts a lawsuit or a cause of action, the court lacks the subject matter to consider it (*see Astro Ready Mix, LLC v MTA Long Is. R.R.*, 217 AD3d 816, 817 [2d Dept 2023]).

After careful consideration, the court finds that the portions of plaintiff's claims for rent, unjust enrichment, and use and occupancy relating to areas beyond the blocked-off portions of the roof are preempted. As defendant points out and plaintiff concedes, defendant complied with the federal RF emission standards and received certificates of compliance to that effect. Further, on several occasions, plaintiff acknowledged that defendant's antennas, with the chained barricades, brought defendant's upgrades into compliance. Yet, as defendant points out, plaintiff's own statements suggest that plaintiff has assessed back rent based on space that allegedly contained illegal RF emissions. For example, in its amended interrogatory responses, plaintiff alleges that defendant

> "constructively occupied approximately 2,197 square feet of the roof on the Grunberg Property *by virtue of the radio frequency ('RF') emissions from the telecommunications equipment it had installed which exceeded health and safety parameters established by the Federal Communications Commission.* Specifically, upon information and belief, approximately 1,972 square feet of the northern portion of the roof and 225 square feet of the southern portion of the roof were constructively occupied by AT&T due to unsafe RF levels in these area" (NYSCEF Doc. No. 163, *3-4 [response to interrogatory number 17] [emphasis supplied]).

160060/2019   GRUNBERG 77 LLC vs. CELLULAR TELEPHONE COMPANY
Motion No. 005

Page 9 of 21

Thus, even though plaintiff characterizes the additional charges based on the alleged use of extra space, the calculation of that space involved the determination that there were unsafe levels of RF emissions.

In addition, plaintiff's interrogatory responses, which property manager Dakota Hendy verified, states that the additional rent was "due to unsafe RF levels in these areas" (NYSCEF Doc. No. 163, *3-4 [answer to interrogatory number 17]. Hendy confirmed at her deposition that plaintiff sought back rent for areas beyond the blocked-off portions of the roof due to plaintiff's assessment of RF emissions (*see* NYSCEF Doc. No. 170, p 50 lines 14-16, p 89 lines 13-19). Susan Donahue, chief operating officer of Fanny Grunberg & Associates, which is affiliated with plaintiff, suggested that the space beyond the chain barrier should have been included in defendant's rent because the barrier "[didn't] bar our RF frequency" (NYSCEF Doc. No. 168, p 145 line 7). Any assessment of these portions of plaintiff's claims requires a calculation of RF levels and the amount of space involved. Accordingly, the court cannot address the parts of the second through fourth causes of action that seek money based on the alleged space taken up by excessive RF emissions, as they are preempted.

### Issues Regarding Waiver

Next, defendant challenges plaintiff's claim for additional rent due to the chains defendant set up to comply with the FCC emissions rule as well as plaintiff's allegations related to the placement of eight antennas on the bulkhead. The court addresses the portion of the claim that is not preempted. According to defendant, plaintiff waived the first of these claims when it approved the use of the barriers in 2013 without asking for additional rent at that time. It cites the amended complaint, which states that defendant "without [plaintiff's] permission, unilaterally began to use additional space" in "a portion of the roof area not a part of the Premises"

**160060/2019  GRUNBERG 77 LLC vs. CELLULAR TELEPHONE COMPANY**
**Motion No. 005**

**Page 10 of 21**

[* 10]

10 of 21

(NYSCEF Doc. No. 132, ¶ 13). Defendant relies on the January 3, 2014, email in which Ariel Grunberg authorized the upgrade only if defendant installed signage and the challenged barriers (NYSCEF Doc. No. 196). Defendant cites *Jefpaul Garage Corp. v Presbyterian Hosp. in City of N.Y.* (61 NY2d 442, 447 [1984] [*Jefpaul*]) for the proposition "that acceptance of rent by a landlord from a tenant with knowledge of the tenant's violation of the terms of the lease normally results in a waiver of the violation."

Also, defendant argues that plaintiff knew that defendant's plans for the antennas changed in 2002, and that plaintiff approved the location of the antennas, including those on the bulkhead. Although ultimately defendant changed the design so that eight antennas were mounted to the elevator and the stair bulkheads, two were mounted to the south lot line wall, two were mounted to the rear chimney, and equipment including HVAC units were added and Grunberg personally received notification of the changes by a certificate of no effect on approximately February 25, 2002 (NYSCEF Doc. No. 141). In further support, defendant notes that Ariel Grunberg signed the LPC application, which included statements and drawings that showed that there were to be eight antennas on the bulkhead, and received the approval notification directly by letter (NYSCEF Doc. No. 141). It points out that plaintiff approved upgrades in 2006, 2010, and 2013, all of which showed the antennas on the bulkhead (NYSCEF Doc. Nos. 143, 144 [signed off on upgrades]; NYSCEF Doc. No. 147 [approval by email]). At his deposition, Ariel Grunberg acknowledged that he knew that there were antennas on the elevator bulkhead at least as early as December 30, 2013 (*see* NYSCEF Doc. No. 135, p 61 lines 7-13). [4] According to defendant, collectively, this establishes waiver.

---

[4] Although defendant contends that Ariel Grunberg observed the antennas on the bulkhead in 2002, Grunberg's testimony was that he did not pay attention to the placement of the antennas

160060/2019  GRUNBERG 77 LLC vs. CELLULAR TELEPHONE COMPANY                    Page 11 of 21
Motion No. 005

11 of 21

NYSCEF DOC. NO. 218

In opposition, plaintiff argues that there is a question of fact as to whether it waived its claim to this portion of the additional rent. It cites cases including *EchoStar Satellite L.L.C. v ESPN, Inc.* (79 AD3d 614, 617 [1st Dept 2010]), which states "waiver is an intentional relinquishment of a known right and should not be lightly presumed" (internal quotation marks and citation omitted). It notes that the lease contains a no-waiver clause which states that "[n]o provision may be waived except in a writing signed by both parties" (NYSCEF Doc. No. 134, ¶ 24 [a]). Therefore, plaintiff states that its acceptance of rent alone does not waive its rights (NYSCEF Doc. No. 202, *9 [citing *Elite Gold, Inc. v TT Jewelry Outlet Corp.*, 31 AD3d 338, 340 (1st Dept 2006); *Extel Graphics Tech. v CRG/AGSCB 75 Ninth Ave.*, 1 AD3d 65, 70 (1st Dept 2003)]).

As for its supposed approval of the building permit application, plaintiff states that it did not know Robert McKinnon, who purportedly signed the application on plaintiff's behalf. To the extent that it approved some changes by relying on drawings that showed the antennas and the chain barricades, plaintiff asserts that it was misled by defendant's proposals (NYSCEF Doc. No. 200 [Michael Grunberg aff, ¶ 12). More specifically, plaintiff contends that because the extra antennas and barricades were on the roof when it approved the additional changes, it viewed them as existing elements that did not require approval or disapproval. Plaintiff states that its reliance on and approval of the architectural drawings without objection was due to "'negligence, oversight, or thoughtlessness'" and its "mere silence" on these issues cannot constitute a waiver (NYSCEF Doc. No. 202 [quoting *Peck v Peck*, 232 AD2d 540, 540 (2d Dept 1996)]). It also

---

until "at some point [defendant] started putting fencing up and stuff like that" (NYSCEF Doc. No. 135, p 60 lines 11- 21).

**160060/2019  GRUNBERG 77 LLC vs. CELLULAR TELEPHONE COMPANY**
**Motion No. 005**

**Page 12 of 21**

12 of 21

[* 12]

claims the 2002 LPC application is not admissible to show plaintiff's knowledge that the antennas were on the bulkhead.

In further support, plaintiff submits the affidavit of Michael Grunberg, the managing member of Fanny Grunberg & Associates, LLC, and Ariel Grunberg's brother (NYSCEF Doc. No. 200). Michael Grunberg states that the "changes were not immediately apparent" to his brother (*id.*, ¶ 8). Plaintiff continues that for waiver to exist, it would have had to be actively involved in facilitating the alterations. In contrast to Ariel Grunberg's alleged passivity in response to the changes, plaintiff cites *Simon & Son Upholstery v 601 W. Assoc.* (268 AD2d 359, 360 [1st Dept 2000] [*Simon*]) for the proposition that more active involvement is required to overcome a nonwaiver clause (NYSCEF Doc. No. 202, *10). In *Simon*, the prior landlord approved renovations to the tenant's photography studio, provided the tenant with parking, and included the studio in its sales brochure.

Additionally, plaintiff argues that it did not ask defendant to install the barricades. It states that defendant put down the chains before it received permission for the alterations, and it points out that initially it denied consent for the changes in section A. Plaintiff only agreed to the changes, it claims, once AT&T and its experts agreed that with the proposed barriers, the alterations would be FCC compliant. It argues that the provision in the lease stating the property included "(a) a room/cabinet space of approximately 336 square feet and (b) space on the structure and such essentials as are necessary for the antennas and initial installation" (NYSCEF Doc. No. 134, ¶ 1) is ambiguous – specifically, because (1) part (a) may refer to the equipment room and the construction on top of the room and (2) defendant did not construct the steel dunnage on top of the roof but used the equipment room exclusively.

160060/2019   GRUNBERG 77 LLC vs. CELLULAR TELEPHONE COMPANY
Motion No.  005

Page 13 of 21

13 of 21

[* 13]

In reply, defendant states that Michael Grunberg's affidavit contradicts his brother's deposition testimony and additionally is self-serving and unsupported by other evidence (NYSCEF Doc. No. 205, *4 [quoting *Phillips v Bronx Lebanon Hosp.*, 268 AD2d 318, 320 [1st Dept 2000]). For example, although Michael Grunberg stated that plaintiff did not approve of the change in the placement of the antennas and that these changes were not immediately apparent, Ariel Grunberg conceded at deposition that he observed the construction work and that he noticed the antennas on the bulkhead at least by 2013, when defendant "started putting fencing up" (NYSCEF Doc. No. 135, p 60 lines 19-20), plaintiff hired EBI Consulting, and he approved various upgrades. When he approved the upgrades, Ariel Grunberg reviewed drawings that also showed the antennas on the bulkhead.

As for the chain barriers, defendant notes that in 2013, after EBI Consulting advised plaintiff to keep them up so the RF emissions would not exceed the FCC limitations, plaintiff approved defendant's proposed changes with the proviso that defendant retain the barriers.[5] Also, according to defendant, Michael Grunberg's statements that "the total amount of combined spaced lease to [defendant] in the Equipment Room and atop the steel dunnage . . . was 336 square feet. . . ." and that the lease did not give defendant "the right to occupy the entire Equipment Room" (NYSCEF Doc. No. 200, ¶ 4) are belied, among other things, by the lease itself, which states, at paragraph 1, that plaintiff leased defendant "(a) a room/cabinet space of approximately 336 square feet *and* (b) space on the structure and such easements as are necessary for the antennas and initial installation as described on attached [exhibit]" (*id.* [emphasis supplied]). Defendant responds that, contrary to plaintiff's assertion, the LPC

---

[5] The court notes that defendant does not address plaintiff's contention that it put up the barriers before it obtained plaintiff's approval.

**160060/2019  GRUNBERG 77 LLC vs. CELLULAR TELEPHONE COMPANY**
Motion No. 005

**Page 14 of 21**

application and approval suffice as documentary evidence properly considered during motion practice (NYSCEF Doc. No. 205, *6 [citing *Dixon v 105 W. 75th St. LLC*, 148 AD3d 623, 624, 628 [1st Dept 2017]).[6] It further supports the authenticity of the LPC materials through the affirmation of Lily Fan, Esq., the "Director of Enforcement and FOIL Officer" at LPC (NYSCEF Doc. No. 211).

Defendant also rejects plaintiff's statements that the nonwaiver provision precludes summary judgment and that it did not participate in or approve of the placement of the barricades or of the antennas. It contends that *Simon* necessitates a finding in its favor, as plaintiff here also was actively involved in the changes – among other things, by its approval of the numerous upgrades and modifications it proposed, which it signified by signing the construction drawings and permits, and by its requirement that defendant's chain barriers remain. Defendant distinguishes *Peck*, as in that case the defendant acknowledged that plaintiff's delay in cashing defendant's checks was not a waiver.

The court concludes that, by its actions, plaintiff consented to the placement of the equipment space, the antennas, and the chain barricades. The court rejects plaintiff's suggestion that defendant was not entitled to full use of the equipment space, but instead was limited to 336 square feet. As defendant points out, the lease itself provides for the full use of the equipment room plus space outside of the room as specified (*see* NYSCEF Doc. No. 134, ¶ 1). Therefore, this does not support plaintiff's argument that defendant breached the agreement.[7] In addition, plaintiff's written approval of alterations on drawings that showed the existence of antennas on

---

[6] At page 624 in *Dixon*, the court describes the document; at page 628, the court concludes that the document was not "inauthentic."

[7] Defendant also asserts that the room itself was only 175 square feet and, therefore, it could not have used more than 336 square feet. This is inconsistent with its own statements and with the lease itself. Further, the court need not reach this issue to resolve this part of the dispute.

**160060/2019 GRUNBERG 77 LLC vs. CELLULAR TELEPHONE COMPANY**      **Page 15 of 21**
**Motion No. 005**

the bulkhead is sufficient to show its consent to their placement. Moreover, regardless of the credibility of plaintiff's statement that it was unaware there were antennas on the bulkhead prior to 2013, it at least gained knowledge that year, when it hired and relied on the report of its independent environmental specialist. At this point, too, it not only learned of the chain barriers, but it expressly conditioned its approval of defendant's 2013 proposed alterations on the retention of those barriers. Collectively, this is sufficient to show consent to these conditions. Regardless of whether plaintiff authorized McKinnon to sign the building permit, plaintiff was aware of the permit's existence and of other documents that showed defendant's plans.

The existence of the nonwaiver clause in the lease does not alter the court's conclusion. Although a nonwaiver clause is not waived lightly, such waiver generally exists where the landlord accepts rent from a tenant although it has knowledge of its purported violations of lease's terms (*Jefpaul*, 61 NY2d at 447 [citing *Woolard v Schaffer Stores Co.*, 272 NY 304, 312 [1936]). Thus, "[w]hen rent is accepted with knowledge of particular conduct which is claimed to be a default, the acceptance of such rent constitutes a waiver by landlord of the default" (*Madison Ave. Leasehold, LLC v Madison Bentley Assoc. LLC*, 30 AD3d 1, 6 [1st Dept], *affd* 8 NY3d 59 [2006]).[8] Here, plaintiff's active involvement and knowledge, including its approvals of many of the changes to which it belatedly objects, constitutes a waiver of the claims for additional rent. As such, *Simon* supports the position that the nonwaiver clauses themselves were waived. Although it did not actively promote the roof space in a sales brochure, as was the case in *Simon*, plaintiff was fully apprised through the LPC approval, which was mailed to plaintiff;

---

[8] The Court of Appeals affirmed the decision on another ground, and therefore it did not reach the issue of the nonwaiver clause.

**160060/2019 GRUNBERG 77 LLC vs. CELLULAR TELEPHONE COMPANY**
**Motion No. 005**

Page 16 of 21

16 of 21

through submission of drawings and proposals to it by defendant; and through the work of its consultant. Further, plaintiff approved many of the changes it challenges in this lawsuit.

Plaintiff argues that it did not object to the antennas when it viewed the drawings because the antennas were already present and, therefore, he did not believe he had to approve or object to them. According to plaintiff, this is negligence and, as such, it vitiates defendant's waiver argument. Plaintiff's position is unpersuasive. Its knowledge of the alleged breach for years before plaintiff raised its objection constitutes a waiver (*see Kenyon & Kenyon v Logany, LLC*, 33 AD3d 538, 538-539 [1st Dept 2006]). Further, the court rejects plaintiff's current argument that it counted the double antennas as two antennas apiece, as it is inconsistent with plaintiff's statement in its notice of default that "more than 15 antennas on the Building" in violation of the lease (NYSCEF Doc. No. 157, *1); indeed, plaintiff has not pointed to any communications to defendant or in its complaint and other court filings that support its position.

The court rejects plaintiff's position that defendant forced plaintiff to accept the placement of the chain barricades on the property, as the Ariel Grunberg email that insists on their presence contradicts this position. This case also is distinguishable from *Excel Graphics Tech. v CFG/AGSCB 75 Ninth Ave.* (1 AD3d 65, 69 [1st Dept 2003]), on which plaintiff relies, as there the lease explicitly provided that the landlord's receipt of rent with knowledge of any breach of the lease "'shall not be deemed a waiver of such breach'" (quoting *Jefpaul*, 61 NY2d at 446). Plaintiff points to no such provision in the lease at hand. Additionally, contrary to plaintiff's argument, paragraph 1 of the lease is not ambiguous.

**Period for Which Rent is Owed**

As stated, plaintiff also seeks rent through the end date of the lease, raising the total due from $93,299.20 to $426,113.40. The parties dispute whether either one of them defaulted on the

**160060/2019   GRUNBERG 77 LLC vs. CELLULAR TELEPHONE COMPANY**
Motion No. 005

Page 17 of 21

17 of 21

[* 17]

lease, either triggering defendant's obligation to pay through the end of the lease or relieving defendant of such duty. It is not necessary to resolve this dispute. In its application to dismiss this portion of plaintiff's claim, defendant argues that it had the right to terminate the lease without liability or penalty if it provided plaintiff with 90 days of written notice and paid a termination fee equal to one year of rent at the rate in effect at the time of termination (*id.*, ¶ 6 [c]). It points to an internal email dated August 1, 2019, which indicates that it paid the termination fee in July 2019, following its purported termination notice dated June 27, 2019, and sent by Federal Express, "to be effective 9/30/2019 pursuant to section 6c of the agreement" (*see* NYSCEF Doc. No. 166, *3-4 [August 1, 2019, email]). In its counterstatement of material facts, plaintiff acknowledges that defendant "decommissioned the site in June of 2019," but it denies that the $140,248.80 payment defendant made at that time was a termination fee (NYSCEF Doc. No. 201, ¶ 82). Defendant has explained the reason for the payment, and plaintiff has acknowledged the receipt of both the $140,248.80 check and the notice in June that defendant had decommissioned the site. This is sufficient to show that defendant complied with the early termination provision of the lease. Plaintiff conclusorily denies that the three-month's notice, along with the $140,248.80 payment, did not constitute termination. However, it does not provide any explanation or support for its statement. Accordingly, this does not alter the court's determination as to summary judgment.

**Cross-Motion**

Finally, the court turns to the cross-motion. Plaintiff argues that it is entitled to payment of $93,299.20, which allegedly is the total amount contained in the eight rent checks it purportedly returned to defendant between October 2018 and May 2019. In opposition, defendant urges that plaintiff denied defendant access to the roof in violation of the lease, and

**160060/2019 GRUNBERG 77 LLC vs. CELLULAR TELEPHONE COMPANY**
**Motion No. 005**

Page 18 of 21

18 of 21

[* 18]

therefore defendant does not have to pay for the months that it remained in occupation. To the extent that plaintiff may seek the money as use and occupancy, defendant contends that this is a new theory of liability, and that plaintiff cannot introduce it at this time.

After careful consideration, the court grants the cross-motion as to liability under the lease, but denies judgment as to damages. Defendant cannot avoid its rental obligation based on plaintiff's alleged default, as it remained on and utilized the premises during this period. The rent payments at issue "were properly rejected because [plaintiff] had served a notice of termination, and acceptance of the rent would have vitiated that notice. Moreover, *even if unwarranted*, a landlord's rejection of rent payments does not relieve a tenant of its obligations under the lease" (*St. Catherine of Sienna Roman Catholic Church, at St. Albans, Queens County v 118 Convent Assoc., LLC*, 44 Misc 3d 8, 11 [App Term, 2d Dept, 11th and 13th Judicial Districts 2014] [emphasis supplied]).

Although defendant states it owes no rent because it was denied access to the roof, there is no support for these contentions. Instead, at deposition, Donahue explained the process for gaining access to the roof as follows: "[T]he building is locked 24/7 with key and intercom access. So they did not need Anibal (the building superintendent) to access the roof. They did need Anibal to open the building to allow them entry" (NYSCEF Doc. 3No. 136, page 290 lines 22-25). Moreover, in the email chains to which defendant refers, in which it requested access to the roof, plaintiff arranged for access for the requested days (see NYSCEF Doc. 159, *14, 23 [Nov 14 emails]). Further, under paragraph 14, section (b) of the lease, defendant had to send plaintiff written notice of its alleged default in providing access so that plaintiff had the opportunity to cure (NYSCEF Doc. No. 134). There is no evidence indicating that defendant sent this formal notice or that it either formally or informally objected to the longstanding system.

**160060/2019  GRUNBERG 77 LLC vs. CELLULAR TELEPHONE COMPANY**
**Motion No.  005**

**Page 19 of 21**

There is a question as to the amount of rent defendant owes to plaintiff, however. Plaintiff alleges that defendant owes it rent starting from October 2018. According to defendant's internal email, however, the October 2018 rent check cleared (*see* NYSCEF Doc. No. 166, *3-4 [August 1, 2019, email]). Plaintiff's submission of a copy of the front of the check does not show that the check was rejected, because the front of a check does not show whether it was returned or deposited (NYSCEF Doc. No. 214). Similarly, plaintiff originally submitted a copy of this check with the notation that the original was mailed to Sieratzki, its attorney (NYSCEF Doc. No. 199). However, this is not sufficient to show whether the October payment was rejected. Therefore, a hearing must be held to determine the amount due.

The court has considered all of the issues the parties have raised and the documents submitted, even if not expressly addressed in this order.

*       *       *

Accordingly, and for the above reasons, it is hereby

ORDERED that the motion is granted to the extent of dismissing the second through fourth causes of action in their entirety; and the first cause of action to the extent that it seeks additional rent after defendant's termination notice and payment; and it is further

ORDERED that the cross-motion is granted on the issue of liability only and a hearing and determination on the issue of damages is directed to be held before Judicial Hearing Officer Alan C. Marin; and it is further

**160060/2019   GRUNBERG 77 LLC vs. CELLULAR TELEPHONE COMPANY**
**Motion No. 005**

**Page 20 of 21**

20 of 21

ORDERED that within 30 days counsel for either party shall file a copy of this decision and order with the Special Referee Clerk, Room 119M, to arrange a date for the hearing.

This constitutes the decision and order of the court.

_____
7/10/2024
DATE

HON. LESLIE A. STROTH
J.S.C.

| CHECK ONE: | ☐ CASE DISPOSED | | ☒ NON-FINAL DISPOSITION | |
|---|---|---|---|---|
| | ☐ GRANTED | ☐ DENIED | ☐ GRANTED IN PART | ☒ OTHER |
| APPLICATION: | ☐ SETTLE ORDER | | ☐ SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | ☐ INCLUDES TRANSFER/REASSIGN | | ☐ FIDUCIARY APPOINTMENT | ☐ REFERENCE |

160060/2019  GRUNBERG 77 LLC vs. CELLULAR TELEPHONE COMPANY
Motion No.  005

Page 21 of 21

21 of 21